# OAHU RAILWAY AND LAND COMPANY *v.* WAIALUA AGRICULTURAL COMPANY, LIMITED.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 27, 1905.        DECIDED MARCH 10, 1905.

HARTWELL, J., AND CIRCUIT JUDGES DE BOLT AND PARSONS IN PLACE OF FREAR, C.J., AND WILDER, J.

SET OFF—*recoupment—pleading.*

A written agreement contained several distinct matters of agreement, among others an agreement to buy coal for a term of years at a price named; also an agreement for leasing land for a rental to be arranged as stated. Held: The two transactions are so disconnected in their nature that a claim for rent of the land cannot be recouped in an action for the price of coal; nor can a claim for the reasonable value of the use of the land be set off, since it is unliquidated.

ID.—*leases—agreement—construction.*

An agreement that defendant "will from time to time lease to" plaintiff certain lands when not required for immediate uses of defendant, "such leasing to be upon the following terms and conditions: The rental shall be arranged with" plaintiff "upon the basis of a minimum fair percentage of the total rental paid by" defendant "for such lands as a whole—a corresponding reduction in rent to be made when any portion is so occupied by" defendant does not contemplate execution of leases, the words "lease" and "leasing" being used to mean letting. Held: The rental agreement means that the percentage shall be not according to acreage but values of land held by the parties, and was intended to put the rent on the basis of the lowest reasonable estimate of the values of the respective acres of land in its unimproved condition.

OPINION OF THE COURT BY HARTWELL, J.

The action was brought to recover $4,800 and interest, balance of the agreed price of coal sold by the plaintiff to the defendant under an agreement of October 12, 1898, in which the defendant agreed to buy coal of the plaintiff for a term of years for a specified price. The answer admits the sale and purchase but denies that any balance is owing and sets up "by way of set off or counter claim" a claim for rent of portions of the upper lands of Kawailoa, which under the same agreement the plaintiff had used, showing a balance of $11,856.08 in favor of the defendant, for which it asks judgment. In the answer as finally amended there are four counts. The first, second and fourth are based on the agreement claiming that it meant that the rent should be proportioned to the number of acres used by the plaintiff as compared with the acreage of all of the upper lands of Kawailoa, and sets forth the number of acres used by the plaintiff, which varied from year to year. The entire upper lands of Kawailoa were hired by the plaintiff of the Bishop Estate for a fixed annual rental. The third count, claiming the same sum as the reasonable value of the land used by the plaintiff, appeared in a second amended answer. To the answer as first amended the defendant demurred on the ground that the claims were unliquidated and that none of them arose out of the same transaction and therefore could neither be set off nor recouped. The court overruled the demurrer, regarding the claim as recoupment, and also overruled the plaintiff's demurrer to the finally amended answer containing the third count for reasonable value of the use of the land, which demurrer was based on the grounds of the first demurrer, and also on the ground that the first, second and fourth counts showed no cause of action. Exceptions were allowed to the overruling of each demurrer.

If the defendant's rental claim can either be recouped or set off then the pleading was good and the demurrer ought not to have been sustained.

We cannot, however, sustain the plea as recoupment, because the two transactions are entirely distinct and separate from each other, although provided for in the same instrument. The defendant's agreement to buy coal at stated prices could not be a consideration for its agreement to let land to the plaintiff. It was the defendant which agreed to buy the coal, and not the plaintiff which agreed to sell. The defendant presents no claim for breach of an agreement by the plaintiff to sell coal. Neither of the agreements for buying coal or letting land in any way depends upon the other. "Where a contract, though entire in its form, relates to several distinct and independent acts to be done at different times, it is divisible in its nature, and an action of assumpsit will lie on each default." 1 Story on Cont., Sec. 25 d. Recouping is allowed only in matters arising out of and connected with the transaction upon which the plaintiff's action is brought. For instance, a defendant in an action for the price of goods furnished may recoup damages for breach of warranty or for fraud or negligence "growing out of and relating to the transaction in question." *Dushane v. Benedict,* 120 U. S. 637. So in an action for the agreed price of making anything for the defendant, the latter may recoup loss caused to him by use of defective material or from defective workmanship. But, as stated in *Erickson v. Volcano Co.,* 13 Haw. 430, "the very idea of a set off is that it is a debt growing out of a separate transaction from that sued on."

The case then resolves itself into considering whether the rent can be set off either under the first, second and fourth counts, which can be done if the agreement is construed as prescribing a definite sum for rental or can be set off under the third count for the value. We construe the agreement- however, as requiring the plaintiff to pay for the use of the land not the definite sum ascertainable by taking the ratio between the respective acreages used by the parties, but by considering the values of the land so used. This would rest upon a verdict of the jury upon evidence of value, and is not liquidated until ascertained by verdict. Our construction of the agree-

ment eliminates the defendant's claim in its third count for the reasonable value of the use of the land.

The agreement provides that the defendant "will *from time to time* lease to the party of the second part" (being the plaintiff) "for grazing purposes all of the upper lands of Kawailoa when not required for the immediate uses of the party of the first part" (defendant) "such leasing to be upon the following terms and conditions: The rental *shall be arranged* with the party of the second part" (plaintiff) "upon the *basis* of a minimum fair percentage of the total rental paid by the party of the first part" (defendant) "for such lands as a whole; * * * a corresponding reduction in rent to be made when any portion is so occupied by the party of the first part" (defendant). The agreement further provides for constant changes in the land occupied according as the defendant should require land for its plantation or for supplying small farmer tenantry upon the lands, and also that the plaintiff might "withdraw from such agreements of lease at any time and surrender any portion of such pasturage lands when it may so desire and a correspond-ing reduction of rental shall thereupon be made, such leases to be for the term of the leases held by the party of the first part" (defendant) "unless terminated as aforesaid." The agreement also requires the plaintiff to use the land under certain prescribed conditions and to the extent and with and subject to the restrictions therein named.

It does not appear to us to be clear that the agreement con-templated the execution by the parties from time to time of new leases for the varying parcels of land which the plain-tiff should use. It would be a very cumbrous and inconvenient way of doing things in order to accomplish the clearly intended object, which is that the defendant would let the plaintiff use the lands named in the agreement under the conditions and to the extent therein specified; nor perhaps can the agreement be regarded as a lease. Apparently the words "lease" and "leasing" are used in a not uncommon way to mean letting. An agreed rental for such use of land does not necessarily

imply a formal lease with a definite term and a description of the premises demised; but it is more difficult to show what the parties meant by rental "arranged upon the basis of a minimum fair percentage of the total rental paid by the lessor for such lands as a whole, with a corresponding reduction of rent when any portion of the land should be re-taken by the lessor." The plaintiff claims that if the agreement is to be taken as a lease these words are of such uncertain meaning that the lease is void. If, however, the agreement concerning the compensation to be paid for the letting is not so expressed as to be ascertainable it does not follow that the party using the land would not be required to pay what its use was worth. On the contrary, this obligation is implied by the law.

The plaintiff insists that if the words in question have any intelligible meaning, which it denies, it is that the rent is to be apportioned according to the value rather than to the area of the land, while the defendant calls for an apportionment by area. The latter method takes the ratio between the area of that part of the land of Kawailoa used by the plaintiff and the entire area of the land in order to ascertain how much of the rent paid by the plaintiff to its lessor should be paid by the plaintiff to the defendant. In the plaintiff's view the percentage of the rent payable by it would be the ratio between the value of the land used by it and the value of the entire land of Kawailoa, which it may be inferred would be a considerably lower rental than upon the defendant's method of computation. This is readily seen by considering that for instance, if the plaintiff occupied half of the land, which was worth only one-fourth as much as all of the land, the rent would be one-fourth of the entire rent instead of one-half, as it would be on the basis of acreage. A *fair* proportion of the rent would naturally refer to the fairly estimated values of the land, and in that meaning a *minimum* fair proportion would be the lowest proportionate value which is fair. On the other hand, it is difficult to assign any meaning to either of the words "fair" or "minimum" if the proportion is based on acreage,

since as shown by the defendant's pleadings that could be exactly stated. The parties, as we think, meant to fix the rent payable by the plaintiff to the defendant on the basis of the lowest reasonable estimate of the values of the respective areas of land, varying, of course, from time to time to correspond with the values of the lands used by the plaintiff; but we do not think that the parties contemplated the enhanced or improved value of the land held by the defendant, but only its value in its unimproved condition.

Our statute on the subject of set off is the following:

"It shall be competent to the defendant in any civil action to plead an off-set of like kind and denomination, existing in the same right, between him and the plaintiff, or having made a legal tender of money in full payment of the plaintiff's demand, to plead such tender, and bring the amount thereof into court in bar of further interest and costs, after such tender." Sec. 1752, R. L.

"If the demand set off is founded on a bond or other contract having a penalty, no more shall be set off than the sum equitably due." Sec. 1753, R. L.

"If there are several plaintiffs, the demand set off shall be due from them all jointly; if there are several defendants, the demand set off shall be due to them all jointly, except as is provided in the following section." Sec. 1754, R. L.

We think that the kind of demand which may be set off under the above statute does not include an unliquidated claim, but only a definite claim which can be fixed by computation. The claim allowed to be set off in the *Erickson* case (ante) was, it is true, based upon a quantum valebat; but the question before the court was simply whether the claim grew out of an independent transaction. The court did, however, hold in that case that unliquidated damages for the plaintiff's defective performance of the agreement sued on "could be allowed only by way of recoupment." None of the cases cited by the defendant appear to go to the length of holding that in the absence of express statutory authority an unliquidated claim, although based on an implied premise, can be set off. The de-

fendant's claim being for an unliquidated amount, cannot be set off as a debt under our statute.

Exceptions sustained. The order overruling the demurrer is vacated and the case remanded to the circuit court for further proceedings conforming herewith.

*Ballou & Marx* for plaintiff.

*Castle & Withington* for defendant.