# WAIALUA AGRICULTURAL COMPANY, LIMITED, *v.* OAHU RAILWAY AND LAND COMPANY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED OCTOBER 13, 1906.     DECIDED NOVEMBER 3, 1906.

HARTWELL AND WILDER, JJ., AND CIRCUIT JUDGE DE BOLT IN PLACE OF FREAR, C. J.

AGREEMENT FOR RENTAL—*construction—rule in* 16 *Haw.* 520 *required to be followed.*

> The agreement between the parties that rental for land used for pasturage should be arranged "upon the basis of a minimum fair percentage of the total rental paid for such lands as a whole," as construed in 16 Haw. 520, requires ascertainment of the values for pasturage of the acreages used by the plaintiff and the values for any purposes of the acreages used by the defendant, the ratio between such values determining the percentage of the total rental of $3780 paid to the Bishop Estate by the plaintiff.

OPINION OF THE COURT BY HARTWELL, J.

The case is fully stated by the circuit judge in his decision which was as follows:

"Plaintiff in its declaration alleges that in and by virtue of a certain agreement made between it and defendant on October 12, 1898, plaintiff demised and leased to defendant for grazing purposes, all the upper lands of Kawailoa when not required for the immediate uses of the party of the first part, and that defendant, in and by virtue of said indenture, promised to pay plaintiff therefor a minimum fair percentage of the total rental paid by plaintiff for the land as a whole, said lease to be from the first day of October 1898.

"From the evidence it appears that the defendant corporation had held the lease of the whole land of Kawailoa from the Bishop Estate and had used said lands as a cattle ranch. During the year 1898, or shortly prior thereto, the parties sought

to establish a sugar plantation on this and adjacent lands and it was finally arranged that the defendant should surrender its lease of the lands of Kawailoa to the Bishop Estate and secure a lease of the same for the plaintiff corporation. This was accomplished and plaintiff obtained said lease for a term of fifty years, the rental to be paid to the Bishop Estate for the first ten years of the term being $3500.00 per annum, also taxes, amounting to $280.00 per annum. The yearly rental for the remaining forty years was to be a certain proportion of the profits from the produce of the lands. The agreement of October 12, 1898, provides that the plaintiff 'will from time to time lease to the party of the second part for grazing purposes all of the upper lands of Kawailoa when not required for the immediate uses of the party of the first part, such leasing to be upon the following terms and conditions: The rental shall be arranged with the party of the second part upon the basis of a minimum fair percentage of the total rental paid by the party of the first part for such lands as a whole * * * * * a corresponding reduction in rent to be made when any portion is so occupied by the party of the first part.' The agreement further provides for constant changes in the land occupied according as the plaintiff should require land for its plantation or for supplying small farmer tenantry upon the lands and also that the defendant might 'withdraw from such agreement of lease at any time and surrender any portion of such pasturage lands when it may so desire and a corresponding reduction of the rental shall thereupon be made, such lease to be for the term of the lease held by the party of the first part, unless terminated as aforesaid.' The agreement also requires the defendant to use the land under certain prescribed conditions and to the extent and with and subject to the restrictions therein named.

"There is some uncertainty as to what lands were understood by the parties to constitute 'the upper lands of Kawailoa' but there is ample evidence to conclude that they consisted of all of the land of Kawailoa between the bluff and the forest fence and being all of lots marked 20, 21, 22, 23 and 24 on map introduced by the plaintiff and we will so consider them. These lots contain an area of 13,052 acres.

"The evidence as to when the plaintiff occupied some of these lots is not as clear as it might be, but from the testimony of Mr. Goodale it appears that from October 1st, 1898, to January 1st, 1899, plaintiff began occupying lot 20 which contained an area of 1234 acres leaving defendant with 11,818 acres. In

January 1900 plaintiff began occupying lot 21 which consisted of 1058 acres, leaving defendant with 10,760 acres. Lots 22 and 23 were taken by plaintiff sometime during the year 1901, at what part of the year the evidence does not disclose. We will therefore consider that these lots (22 and 23) were taken into control of the plaintiff in January 1901. In this manner it will seem that the respective parties held the following areas during the following periods:

|  | Plaintiff | Defendant |
| --- | --- | --- |
| October 1st, 1898 to January 1st, 1899 . . . . . . . . . . . . . . . . . . . . | 0 | 13,052 acres |
| January 1st, 1899 to January 1st, 1900 . . . . . . . . . . . . . . . . . . . . | 1234 | 11,818 " |
| January 1st, 1900 to January 1st, 1901 . . . . . . . . . . . . . . . . . . . . | 2292 | 10,760 " |
| January 1st, 1901 to October 1st, 1903 . . . . . . . . . . . . . . . . . . . . | 4632 | 8,420 " |

"In Oahu Railway and Land Co., v. Waialua Agricultural Co., 16 Haw. 520, the Supreme Court speaking of this agreement says, 'We construe the agreement, however, as requiring the plaintiff (defendant in this case) to pay for the use of the land not the definite sum ascertainable by taking the ratio between the respective acreage used by the parties, but by considering the value of the land so used. This would rest upon a verdict of the jury upon evidence of value, and is not liquidated until ascertained by verdict.'

"In the present action a jury has been waived by stipulation of the parties and the court must endeavor to ascertain from the evidence what the value of the land used by defendant is. It is to be observed that the land was leased for grazing purposes only, therefore the value must be estimated with reference to that purpose.

"The evidence upon the value of the land for grazing purposes is not satisfactory. It is conceded by the witnesses both for plaintiff and defendant that the grasses on these lands are not of the most nutritious and that at best the lands are suited merely for breeding and not for fattening purposes. There was during the period in question considerable lantana on the lands which would necessitate considerable expense to keep down. Mr. McCandless testified that for ranching purposes the land was worth twenty cents per acre and gave estimates of the number of store cattle that might be taken off the land

yearly. It seems from the evidence of Messrs. Von Holt and Campbell that the number of store cattle that Mr. McCandless considered could be taken off the land yearly was much in excess of what actually had been taken. Mr. Campbell had himself held these same lands under lease and had operated a cattle ranch there. He had held the entire land of Kawailoa besides grazing interests in adjoining lands, and yet had never considered all of those lands capable of carrying the year round the herd that Mr. McCandless thought could be safely kept there. Unsatisfactory as the evidence is on this point the court finds that under all the evidence in the case a 'minimum fair percentage of the total rental paid by the plaintiff for such lands as a whole' would be ten cents per acre, which as hereinabove calculated would make the defendant liable to plaintiff in the sum of $4899.60.

"Judgment is accordingly given for the plaintiff for such sum of $4899.60 with costs of court."

Both the plaintiff and the defendant bring exceptions, the plaintiff's exceptions being as follows:

"1st:—That said decision is contrary to the law and the evidence and the weight of the evidence.

"2nd:—To so much of said decision as finds that the defendant is liable to the plaintiff in the sum of Four Thousand Eight Hundred and Ninety Nine Dollars and Sixty Cents ($4,899.60) as erroneous in that the said amount is insufficient and that a greater amount should have been found.

"3rd:—To that portion of the decision which bases the liability of the defendant to the plaintiff on a flat rate of ten cents per acre per annum, in that under the terms of the lease particularly as construed in the case of the Oahu Railway & Land Company vs: the Waialua Agricultural Company, 16 Haw. 20, the basis adopted should have been the values of the respective areas of land in its unimproved condition used by the plaintiff and the defendant and the total rent of the portion by reference thereto, which values the Court has found to be uniform throughout the areas.

"4th:—To the said decision on the ground that upon the facts found in the decision the plaintiff is entitled to a much larger sum than Four Thousand Eight Hundred and Ninety Nine Dollars and Sixty Cents ($4,899.60) to wit:—at least the sum of Nine Thousand Three Hundred and Eighty Two Dollars and Eighty Two Cents ($9,382.82).

"5th:—The failure of the Court to rule and find as requested by the plaintiff upon a request for rulings and findings, and upon each of them made by the plaintiff."

The defendant's exceptions are as follows:

"1.  To said decision on the ground that the same is contrary to the law and the evidence and the weight of the evidence.

"2.  To so much of said decision as finds that the plaintiff is liable to defendant in the sum of Four Thousand Eight Hundred Ninety Nine Dollars and Sixty Cents ($4899.60) on the ground that the said sum is excessive.

"3.  To that portion of the decision which bases the liability of the defendant to the plaintiff on a flat rate of ten cents per acre.

"4.  To the failure of the Court to take into consideration the value of the lands occupied from time to time by the plaintiff.

"5.  To the failure of the Court to take into consideration the total rental paid by the plaintiff for the lands of Kawailoa as a whole.

"6.  To the failure of the Court to calculate the liability of the defendant to the plaintiff on a minimum fair percentage of the total rental instead of the flat rate of ten cents per acre.

"7.  To the failure of the Court to make defendant any allowance for the occupancy by the plaintiff of lot 20 from October first 1898 to January first, 1899, in accordance with the finding that lot 20 was so occupied by plaintiff.

"8.  To the finding of the Court that the phrase 'The upper lands of Kawailoa' as used in the agreement sued upon meant all of the land of Kawailoa between the bluff and the forest fence."

The agreement was construed by this court in *O. R. & L. Co. v. Waialua Agr. Co.,* 16 Haw. 520, as follows:

"We construe the agreement, however, as requiring the plaintiff to pay for the use of the land not the definite sum ascertanable by taking the ratio between the respective acreages used by the parties, but by considering the values of the land so used.  This would rest upon a verdict of the jury upon evidence of value, and is not liquidated until ascertained by verdict." (p. 522.)  We further said: "The parties, as we think, meant to fix the rent payable by the plaintiff to the defendant on the basis of the lowest reasonable estimate of the value of the

respective areas of land, varying, of course, from time to time to correspond with the values of the lands used by the plaintiff; but we do not think that the parties contemplated the enhanced or improved value of the land held by the defendant, but only its value in its unimproved condition." (p. 525.)

The judge who tried the cause considered merely the value of the land used by the defendant and not of "the respective acreages used by the parties." Both parties are agreed that the finding of the judge was wrong, being, as the plaintiff says, insufficient, and, as the defendant says, excessive, and are further agreed that the decision was wrong in basing the defendant's liability to the plaintiff "on a flat rate of ten cents per acre."

We do not wonder that the circuit judge was at a loss to ascertain precisely what the parties meant by their agreement for it was only with great difficulty that we were able to attach any definite meaning to it. Acting, however, on the rule that it is the duty of the court to "strive" to effectuate agreements and to avoid a construction which makes them void we finally evolved from the language unfortunately selected by the parties to express their agreement the meaning above quoted. A new trial therefore is required upon the sustaining of this exception of each party, which involves sustaining the plaintiff's first exception and the defendant's first, third, fourth, fifth, sixth and seventh exceptions. The plaintiff's third exception cannot be sustained in consequence of the absence of any finding made by the trial judge that the "values of the respective areas of land in its unimproved condition used by the plaintiff and the defendant" were "uniform throughout the areas." We cannot say what the result would have been if the court had adopted the rule for ascertaining the rental laid down in our former decision and therefore the plaintiff's fourth exception and the defendant's second cannot be sustained. The plaintiff's fifth exception is overruled since the statute requires the court in jury waived cases merely to "hear and decide the cause both as to the facts and the law and its decision shall be rendered in writing." R. L., Sec. 1747. "Where a jury is waived and

the issues of fact are submitted to the court the finding of the court may be either general or special as in cases where the issues of fact are tried by jury." *Tyng v. Grinnell*, 92 U. S. 469. "Special findings of fact were requested by the defendants and they excepted in numerous instances to the rulings of the court refusing to comply with such requests, all of which are overruled upon the ground that the finding of the circuit court upon the facts may be either general or special." *Ins. Co. v. Folsom*, 85 U. S. 253. The United States statute provides that in jury waived cases "The finding of the court upon the facts which may be either general or special shall have the same effect as the verdict of a jury." Sec. 649 R. S. However desirable it may be to obtain special findings from the court our statute does not require them to be made. Moreover, the rulings and findings requested are involved in the consideration of the decision so that they appear to have been superfluous. Be that as it may there is no error in a refusal of a right not granted, by the statute or by common law. We think that the court properly regarded the upper lands of Kawailoa, which were meant in the agreement, as "the land of Kawailoa between the bluff and the forest fence." Defendant's eighth exception is therefore overruled.

If the rentals payable by the O. R. & L. Co. under this agreement for the land available to the Railway Co. for pasturage are much lower than land ordinarily is worth for pasturage, it must be considered that the available lands were constantly lessening in area as the Waialua Agr. Co. increased its area of cane cultivation, and that all pasturage rights ceased on twelve months' notice so that plans for development of a ranch were impracticable. Evidently the main reason for such low rental was that the Railway Co. surrendered its own lease and secured in its place another lease for the Waialua Agr. Co.

As to the lots 1, 2, 3 and 4, for which the agreement required the Railway Co. to pay only a nominal rental and also as to lot 5, none of them being any part of the upper lands of Kawailoa, those lots are not required to be taken into consideration in

determining "the total rental paid by the party of the first part (Waialua Agr. Co.) for such lands as a whole," which rental we consider to refer to the $3780 with taxes paid by that company as rental to the Bishop Estate. The rentals then will thus be determined: As the values for any purpose of the acreages used by the Waialua Agr. Co. are to the values for pasturage of the acreages used by the Oahu Railway Co. so is the total amount, $3780, paid by the Waialua Agr. Co. to the Bishop Estate as its total rental for all the lands in its lease to the rentals payable by the Oahu Railway Co.

Exceptions sustained.  New trial granted.

*D. L. Withington (Castle & Wilhington* on the brief) for plaintiff.

*S. M. Ballou (Ballou & Marx* on the brief) for defendant.