Mr. Justice Scott delivered the opinion of the Court. To this action of debt on a sealed instrument — a single bill for $200, payable the first day of March, 1848, the defendant below interposed a special plea of partial failure of its consideration, which, as he alleged, was the sale and purchase of some lands and of an improvement upon the public lands. To this plea a demurrer was overruled, and the plaintiff below refusing to answer further, judgment was rendered accordingly. The main question presented is a new one in this court in its present aspect, and is by no means free from difficulty. We think however, it may bo solved in the light of general princples and of the adjudged cases as satisfactorily to the professional mind as any that can come up, although it is undeniably embarrassed by some highly respectable decisions. The greater number of these, however, will be found to have departed from the true principles and spirit of the legal doctrine in question only in restricting two much the field of its legitimate operation. As urn must, in order to arrive at a clear comprehension of the main question before us, look somewhat radically at the doctrines of the law involved, we shall prefer to postpone the consideration of several minor questions until after we shall have examined the general question of the validity of the defence in the common law courts, of partial failure of consideration, in general reference to pleading and the interpretation of contracts beyond the sphere of merely local jurisprudence, as affected by our statutory regulations. When a defendant, in a suit upon a contract in a common law court, comes in and asks to be permitted to interpose a defence founded upon a partial failure of its consideration, he certainly applies for a kind of relief that would have been refused him there peremptorily at one period in the history of those courts, and which at that period could have been obtained only in the equity courts. And it was during that period that the rule obtained as to this doctrine, which is now so often spoken of in our books, as the “old rule.” Hence, the doctrine in queston is in its nature and essence an equity doctrine; although now administered in the common law courts. And. this no less so, although in truth and in fact it might have been originally a doctrine of the ancient common law, stifled by artificial technical rules and driven for refuge into the equity courts. It is far more probable, however, from its essential properties and appropriate adaptation to a condition of advanced civilization, that itis a pure equity doctrine derived by these courts from the civil law. And this probability is strengthened by the circumstance that no common law term expresses with exactness the true legal idea of this doctrine,, while one derived from the civil law, in its present received signification, does so with great clearness. The almost obsolete word “defalk,” falls far short, and although “discount” and “mitigation of damages” approach more nearly, still the one does not fully express the idea, and the other does somewhat more. And like the term “equitable off-set,” fails to present to the mind the essential, that the matter that is to be the foundation of the mitigation or the off-set, to be within the doctrine, must a,rise out of the transaction only on which the suit is founded, and cannot come out of a different affair. “Recoupment,” however, as it is now understood, expresses all this, as it is the keeping back of something that is due, because there is an equitable reason to withhold it, and is now uniformly applied where a man brings an action for a breach of a contract between him and the defendant, and the latter can show that some stipulation in the same contract was made by the plaintiff which he has violated; when the defendant may, if He choose, instead of suing in his turn, recoup his damages arising from the breach committed by the plaintiff whether they be liquidated or not. And thus the law will cut off so much of the plaintiff’s claims as the cross damages will come to, and in effect hold that cross claims arising out of the same transactions shall compensate each other, and the balance only be recoverable by the plaintiff. (Toml. Law Dic., Recoup. Ives v. Van Epps, 22 Wend. Rep. p. 156.) With this understanding of the essence and nature of the doctrine of recoupment, we will proceed to trace rapidly its recognition and gradually development in the common law courts, both in England and in this country, premising first, however, two particulars worthy to be kept in mind, as tending to aid materially in the elucidation of the subject: 1st. That this doctrine has not grown up in the common law courts, upon the ground that the express contract upon which the suit is brought is to be considere d void, and that the recovery is allowed as upon a quantum meruit or quantum valebat upon an implied contract: or that such express contract has been rescinded, and thus a return or an offer to return or its equivalent must be required as a pre-requisite to the admission of the defence. On the contrary, it has grown up under the auspices of quite another and distinct principle of the common law, that has been always operative and of late years has not only been a great favorite of the courts both of law and equity, but of the legislature — that of the law’s abhorance of multiplicity and circuity of action, which can never legitimately tolerate a second litigation on the same matter, where a fair opportunity can be afforded by the first to do final and complete justice between the parties. (McAlister v. Reab, 4 Wend., at p. 492. Caswell v. Coare, 1 Taunt. 566 p., Mansfield. 2d. That recoupment differs from off-set in two essential particulars, that is to say, in being confined to matters only arising out of and connected with the contract upon which the suit is brought, and in having no regard to whether or not such matters be liquidated or unliquidated. There canbe no doubt but that by the ancient common law, it was a fixed principle that if a contract was shown to be tainted with fraud, it could not be made the foundation of a recovery to any extent whatever. And it was also a principle equally well established that if a party was injured by partial failure of the consideration for the contract, or by the non-fulfillment of any of its stipulations, or of a warranty touching its subject matter, the injured party could not defend himself in an action on the contract by proving those facts, but could obtain redress only by a cross action. So, it was a like fixed principle that if one contracted to employ one for a certain time, at a specified price for the whole time, and discharged him without sufficient cause before the expiration of the time, he was bound to pay the whole amor» at of wages for the full time. Nevertheless, it is equally well known that all these rigid rules of the common law courts have materially yielded by a gradual process to the influence of common justice, common sense and common convenience. Thus, the last mentioned rule is now held to have more especial reference to the sustaining of the action than to the admeasurement of the damages to be recovered thereby, and it has become settled that although the whole wages is prima facie the measure, yet the true rule of damages in such cases is the actual loss or injury sustained by the party ready and willing to perform. (Walworth v. Pool, 4 Eng. 394. And so of the first rule, the technical notion that the contract was entire, and that therefore it could not be apportioned and made a ground of recovery in any case where it was tainted with fraud, has long ago been abandoned as a universal rule, although in some cases it may be still insisted on, as where the transaction present ingredients so grossly offensive, or so complicated and connected as to be incapable of clear and definite separation, on the ground that, in such cases, the parties have so much offended against good morals, or have so intricatély woven a web of fraud as to exonerate the courts of justice from the duty of “unraveling the threads so as to separate the sound from the unsound.” .And it is in cases where fraud entered into, but did not equitably go to the entire prevention of a recovery by the plaintiff, that we find the first traces of the defence in question by the common law courts of England. (The cases of Ledger v. Erver, Peak's cases 206. Fleming v. Simpson, 1 Camp. 40, note, are cases of this description.) And the cases both English and American, where the defence was allowed when there was a warranty mala Jides, and refused when the warranty was bona fides, rest upon the same foundation, the courts seeming, for a while, not to he willing to allow it except only in cases where fraud was an ingredient. This distinction and consequent limitation upon the defence, although it had been before challenged and'in several cases disallowed, was not effectually exploded in this country until the case of McAlister v. Reab, (4 Wend. 483,) came up before the Supreme Court of New York, in the year 1831, in which Judge Maucy (in one of those clear judicial judgments, for which he was sometimes so remarkable when upon that bench) reviewed the more prominent English and American authorities, and having shown the falacy of the idea that recoupment proceeded either upon the ground of set-off, or of the nullity of the original contract and exhibited its true ground — the prevention of multiplicity and circuity of action — refused emphatically to restrict its operation to cases merely where fraud was an ingredient. That case was taken to the court of errors in the ensuing year, and the judgment was affirmed by a vote of 18 to 3. (18 Wend. R. 111.) After learned opinions in favor of the doctrines it inculcates by the Chancellor and Senator Allen, who cite various authorities in its support, not noticed by Judge Marcy. The dissenting senators having been evidently mystified as to the general doctrine in placing it upon the ground of set-off. The Chancellor, in his opinion, incidently alludes to a further distinction as “taken by the English Judges between a suit upon the original contract of sale and a suit upon a note or other security taken for the contract price of such sale,” and remarks as to the latter class of cases, “it has been' held that the whole amount of the note or other security may be there recovered where there is no fraud, unless the warranty goes to the whole consideration.” We have looked into the English cases for this distinction, but have not been able to find that it is clearly marked. On the contrary, the cases, when closely scrutinized, seem generally to turn, not upon whether or not the suit was upon the original contract, or a bill or note taken for the contract price of the sale, but upon the question whether or not there was fraud. The case of King v. Boster, (7 East 481,) was upon a note given for a horse, and the cases of Barber v. Backhorn, (Peak's Cases 61,) and of Ledger v. Erver, (ib. 216,) were upon bills of exchange; and in those cases, certainly, fraud was the ground on which the defence was admitted. But be this as it may, inasmuch as the defence that was once admitted only in cases of fraud, and in such cases was admitted as well against a bill or note as when the suit was on the original contract of sale, is now extended to cases where fraud is not an ingredient, by a parity of reasoning, it should be admitted in such additional cases, as well in the one predicament as in the other of the contract. And such seems to have been the universal understanding of the American courts. The cases of Frisbe v. Hoffnagle, (11 John. R. 50), Becker v. Vroman, (13 ib. 302), Spalding v. Vandercook, (2 Wend. R. 431), and Barton v. Steward, (3 id. 286), as remarked by the Chancellor, having disregarded the distinction; and all the subsequent cases in this country have followed this lead, as far as they have come under our observation. The case of Peden v. Moore, (1 Steward & Porter R. 71), was also an action upon a promissory note. This case was decided by the Supreme- Court of Alabama in July, 1831, and without the light thrown upon the subject by the case of McAlister v. Real, which, although previously passed upon by the Supreme Court of New York, was then pending in the Court of Errors of that State. From the truly learned and able opinion of Chief Justice Collier delivered in this case, the Supreme Court of the United States, in the recent case of Withers v. Greene, (9 Howard R. 226), has made some very copious extracts, “on account of the intrinsic force of the reasoning they contain.” And the entire opinion commends itself to the profession in an eminent degree, as containing a discriminating review of the authorities, and a body of reasoning that throws a flood of light upon the general doctrine of partial failure of consideration. The result was that the Supreme Court of Alabama was “of opinion that whenever a defendant can maintain a cross action for damages on account of a defect in personal property purchased by him, or for a non-compliance by the plaintiff with his part of the contract, he may in a defence to an action upon his note made in consequence of such purchase or contract, claim a deduction corresponding with the injury he has sustained. When real estate is the' consideration, the law perhaps is different, and a partial defect in title, so long as the contract is unrescinded, could not be alleged as a defence to an action for the purchase money, and this difference is to be attributed to the extensive jurisdiction exercised by chancery over the title to real estate by causing it to be perfected; and to the additional cause that the vendee sustains no injury by a defect of title so long as he retains possession.” Thus the boundary of mere cases of fraud, as a limitation for the toleration of the defence, was passed, as in New York; and in both States it was allowed in the common law courts, as will be found by an examination of the authorities cited, upon co-incident grounds of reason and exposition of authority; and it will be borne in mind, that each State had her equity courts of general jurisdiction. The defence is also allowed in Mississippi, where there are also' like equity courts, upon the same limitation as in New York, Williams v. Harris, Ferguson &c., 2 Howard R. 627, Brewer v. Harris et al., 2 Sm. Mar. 85, Harmon v. Sanderson, 6 Sm. & Mar. 41: and the case cited by the counsel from 8 Sm. & Mar. 336, (Ferguson v. Oliver), to show the contrary, is only an enforcement of the New York rule, that nothing short of total failure or want of consideration will be allowed to be set up under the plea of the general issue, unless previous notice be given of an intention to rely upon a special defence amounting to only a partial failure. Without any remark, therefore, upon the more recent elementary writers, who in general, now all lay down the doctrine to be that, “The objection to a note or bill of exchange may be that there is a total want of consideration to support it, or that there is only a partial want of consideration. In the first case, it goes to the entire validity of the note, and avoids it. In the latter case, it affects the note with nullity only pro tanto. The same rule applies to cases where there was originally no want of consideration, but there has since been a subsequent failure thereof, either in whole or in part.” (Story on Prom. Notes, p. 204, 5, sec. 187, citing two Editions of Bailey on bills and other authorities; (Story on Bills (2 ed.)p. 214, sec. 184. Story on Cont. p. 99, sec. 153, 154. 2 Green. Ev.,p. 124, 125, sec. 136, & notes, 2 ed.); or any observations on the various cases decided in State or Federal courts, in the States where there were nonequity courts, (14 Pick. R. 198, 22 Pick. R. 510, 23 Pick. R. 283, 1 Mason R. 437, ib. 93), we will conclude this array of authority in favor of the validity of the defence in question, in the general view in which we have been considering it, by citing the case of Withers v. Greene, before alluded to, decided by the Supreme Court of the United States at the January Term, 1850, which was, like the case at bar, an action of debt upon a single bill under seal. And in this case, the defence in question was allowed under pleas of fraud, praying a general discharge from the debt, although they were held bad, as pleas going to the entire discharge, because they omitted a disclaimer of the contract, and a proffer to return the property; but was held good, however, in substance (though bad in form) as pleas under which partial failure of the consideration could be set up in evidence. After an examination of some of the American, and most of the English authorities, that court say, and we think that such is clearly established, “It would seem then to be fairly deducible from the reasoning of the English Judges, from the case of Boston v. Butler, in 7 East decided in 1806, to that of Boulton v. Lattimore, 9 Barn. & Cres., ruled in 1829, that this defence would, by those judges themselves, be deemed permissible, whenever it could be alleged, without danger of surprise and consistently with safety to the rights of the parties; and it appears to be a deduction equally regular, that where notice of the defence was given either by pleading or by any other effectual proceeding, neither surprise nor any other invasion of the rights of the parties could occur or, be reasonably apprehended. But however the rule laid down by the English courts should be understood, it has been repeatedly decided, by learned and able judges in our own country, when acting too, not in virtue of a statutory license oipprovision, but upon principles of justice and convenience and with a view of preventing litigation and expense, that where fraud has occurred in obtaining, or in the performance of contracts, or where there has been a failure of consideration, total or partial, or a breach of warranty, fraudulent or otherwise, all or any of these facts may be relied on in defence by a party when sued upon such contract; and that he shall not be driven to assert them either for protection or as a ground for compensation in a cross action.” In holding the law thus, we have not failed to examine the decisions of some of the other States where it is held otherwise. The Kentucky decisions, mainly relied upon by the counsel in this case, present but little reasoning on the subject, and no authorities are cited. Kentucky probably received the law as her courts enforce it from her mother, Virginia, where in 1830, it was provided by statute that a defendant might allege by plea, not only fraud in the consideration or procurement of any contract, but any such failure in the consideration thereof, or any breach of warranty of the title or soundness of personal property, as would entitle him in any form of action to recover damages at law or relief in equity.' But although we have found the defence in question admissible as to contracts respecting personal property, the case before us makes it necessary that we should go further and determine as to its validity in a court of law when real estate is, the consideration of the contract. Upon one branch of this latter inquiry, the authorities are so nearly uniform, and the reasoning by which they are sustained is so cogent that there can be no great difficulty in arriving at a satisfactory conclusion. We mean that predicament of this question where the partial failure relates to title merely. In this class of cases, both upon principle and authority, no defect of title that does not amount to a total failure of consideration can be set up as a defence to the suit for the purchase money. (Greenleaf v. Cook, 2 Wheat. R. 13. Peden v. Moore, 1 Stew. & Port. R. 81. Frisbee v. Hoffnagle, 11 John. R. 50. Kemp. v. Lee, 3 Pick. R. 452.) And perhaps not even then without eviction. (Bumpass v. Platner, 1 John. Ch. R. 213.) And the denial of the defence in cases where there is but a partial defect of title, is predicated upon the exclusive and peculiar jurisdiction of equity over the title to real estate in causing it to be perfected, and upon the further consideration that the vendee in general sustains no injury by a partial defect of title so long as he retains possession, as also because it would be without the principle upon which recoupment is allowed at all in the common law courts; inasmuch as for want of that peculiar jurisdiction of the equity courts, to cause defective titles to be perfected, they could not do final and complete justice in the premises and terminate all possible further litigation touching the contract. When, however, the partial failure of consideration arises not from a defect of title, but from a defect in the quantity or quality of the land sold, the authorities are not so harmonius. Chancellor Kent, in his commentaries, (2 Kent’s Com., 3 Ed. part 5, led. 39,p. 470, 471,) after alluding to the want of harmony among authorities, then existing on the point as to the defect of title, says, “The principles which govern (the contract) as to defects in the quality or quantiy of the thing sold, are the same in their application to sales of lands or chattels.” And in this he is fully sustained by the New York decisions, and also, in principle, by the South Carolina and Pennsylvania decisions cited by him. And although the question does not seem to have been expressly raised or decided in Mississippi, yet there are several cases there where the New York doctrine, as to this, seems to be taken for granted or countenanced. (Brewer v. Harris et al., 2 Sm. & Mar. 84. Ellis v. Martin, use, &c., ib. 187.) In Alabama, although the New York doctrine was recognized in the case of Wilson v. Jordan, (3 Stew. & Porter, 72), it was afterwards repudiated in the case of Dun, use, &c. v. White & Mc Clardy, 1 Ala. (N. S.) 645,) where it was held that a partial failure of consideration would not be allowed to be set up by a purchaser of land in possession, with warranty when sued for the purchase money, and that decision has been ever since followed in that State. This case, however, is not based upon authority, and the reasoning by which it is sustained, is any thing but satisfactory. It is true the Alabama court cited 5 Cow. R. 195, where the New York court held that an action could not be maintained upon a promissory note executed by Watson, on the following foundation, that is to say, Watson had sold lands to Miller, and conveyed with covenants of general warrant}'-. Afterwards Watson, admitting that the title had failed, executed the note in question to Miller for the amount settled between them as the sum due Miller because of the failure of title. The court put the point upon the ground that the promissory note was in judgment of law, but a promise to pay a subsisting covenant of warranty, which was technically a security of a higher grade, and therefore the action could be sustained only upon that higher security, and for that reason would not lay upon the note. From these premises, the Alabama court concluded that recoupment could not be allowed when there was a subsisting covenant of warranty, because such was a higher security than the note sued on. Now, without placing any stress upon the several statutory regulations of Alabama, which, for most purposes, in effect place promissory notes and covenants and other writings under seal upon the same level as to technical priority, dignity and impeach-ability as to consideration, it will be sufficient answer to this conclusion to say that if this reasoning is good for the conclusion arrived at, it is equally good to overturn a most important part of the doctrine of their previous leading case of Pedan v. Moore, because it will equally exclude recoupment in all cases of personal property where the warranty was in writing under seal. The Alabama court also cited the leading case of Bumpers v. Plainer, (1 John. Ch. R. 213,) and upon this foundation argued that inasmuch as even a total failure of consideration cannot be allowed before eviction from land, ergo, a partial failure cannot be thought of for a moment. But in thus reasoning, they fail to remember that the case related to a failure of title, and that the reason of its rule utterly fails when the rule itself is attempted to be applied to a failure of consideration either total or partial of quantity or quality (not title) of the subject mattere of the sale and warranty. ' When the failure relates to title merely, so long as the vendee holds possesion, he has a title growing up daily, which by mere efflux of time may ultimately ripen, and cannot, therefore, in his conscience say that he has received no advantage from the vendor under whom he came into the possession, and makes it difficult to say that the consideration has indeed totally failed. And we have seen that partial failure of title as to land is not within the principle of the common law, under the auspices of which re-coupment has been recognized and grown up in her courts for want of power in the common law courts to compel the perfection of title which alone exists in the equity courts. When, however, the failure of consideration either total or partial relates to quantity or quality, efflux of time, however great, cannot repair it, and consequently the case cited had no application to any other than cases of failure in the title. If the reasoning of the Alabama court be correct, and the doctrine thereupon establisued as to land, when the partial failure is of quantiy or quality, be sound, then must not only their own case of Pedan v. Moore, be overturned in its greater scope, but also almost all the English and other cases. Because the same reasoning will apply to all cases whatsoever as well when the warranty is mala fides. as when bona fides, provided it be a warranty under seal. We have seen that recoupment does not proceed upon the ground that the contract is a nullity and the recovery is upon a quantum meruit or quantum vedebat, but that the contract stands and the recovery is mitigated to the extent, and because of the fraud or failure. Such a distinction as that developed by the Alabama, court was never taken in England or elsewhere, so far as we have discovered. In England, the objection was not that the warranty was under seal and therefore a security higher in grade than a bill or a promissory note, but simply that it was a subsisting cause of action, on which an independent cross action could be maintained, and that for this reason to admit it as a defence under the general issue was not only obnoxious to the objection that the plaintiff might be surprised; but also to the further one that the record would not, in such case, exhibit that this matter had been once adjudicated by way of recoupment, and thus enable the party to show this former recovery in bar of an after action on the warranty. And no court has gone further to obviate both of these objections than the Alabama court, (see the cases of Robinson v. Windam, 9 Porter R. 397, where the court hold a special plea good which sits up “thatthe matter complained of hadbeen enquired into as a defence to the note, and judgment rendered accordingly, which remains unreversed.”) We cannot therefore adopt so much of the doctrine of the Alabama courts as disallows recoupment in all cases where the subject of the sale and purchase is real estate; but shall follow principle, vindicated as it is by the New York decisions as to this point, (Van Epps v. Harrison, 5 Hill’s R. 63;) and hold that as to real estate, when the partial- failure is in quantity or quality of the subject, recoupment is allowable just as it would be for any partial failure in the sale and purchase of personal property. Upon the next question involved in the case before us,- we are clear that, under our statute, recoupment is as well allowable when the action is upon “any instrument or note in writing under' the seal of the party charged therewith,” as when it is upon a quantum meruit or quantum valcbat, or upon a promissory note, or bill of exchange. (Dig. p. 808, sec. 75. The case of Van Epps v. Harrison, 6 Hill, at page 66, decides a like point as to the New York statute.) The remaining question relates to the sufficiency of the plea filed in this case, which we think is good. It is not even obnoxious to the technical objection that the plea must answer the whole declaration as the failure set up is averred to be to an amount equal to the amount sought to be recovered — one other writing obligatory in addition to this having been (as it appears by the plea) executed on one entire consideration. If, however, it had been otherwise, and had been in form somewhat like this, “And the said defendant as to all said sum of money in the declaration mentioned except as to the sum of one hundred dollars, says actio non,” &c., we should have still held it good under the operation of our statute requiring all pleas “impeaching the consideration of any instrument or note in writing, whether sealed or not,” (Dig. p. 808, sec. 76,) to be supported by affidavit, and the preceding section authorizing a defendant, when sued on a sealed instrument “by special plea to impeach or go into the consideration of such writing in the same manner as if such writing had not been sealed.” (Sec. 75, ib.) The one provision was to enable a defendant to have the same defence against a sealed instrument, so far as it could be founded upon its consideration, or want, or failure, as he already had against an instrument not under seal; and this was granted upon condition that he would present such defence by “special” sworn plea. The other provision restricted the right of the defendant in so far as to take from him any de-fence of this character against any instrument or note in writing not under seal, unless presented by “-special” sworn plea. Thus removing the objection of surprise so long urged against recoupment, when allowed under the plea of the general issue; to obviate which the courts have required previous notice to be given to the plaintiff. And leaving in this State, as under the latter rule, such contracts only as have not been reduced to writing, all others being within the statute requiring the special sworn plea, which dispenses with notice. As aplea of partial failure of consideration would,in legal effect, confess so much as it did not deny, the correct practice doubtless would be to take a default as to this plea, for the .sum confessed, subject to but one final judgment on the whole case at the cost of the losing party as usual: And this, although the general issue might be also filed along with this special plea, because of the general rule that the several distinct pleas in bar authorized under our statute, stand independent of one another. (Williams v. Harris, Ferguson & Co., 2 How. Miss. R. 634. As the plea, in the case before us, does not set up a defect in the title of the subject sold and purchased, but a defect in quantity, it is within the rule that we have adopted for the allowance of recoupment in the law courts. The plea does not set up any want of title in the plaintiff to the improvement in question: on the contrary, it alleges that he was legally entitled to it and in possession of it, by way of showing him to be without excuse for not passing over the possession of it, of which failure the defendant complains, because he has not received this part of the thing he purchased, and for which he executed the note sued on as well as another note! The first cause of demurrer is that the defendant, by his plea, set up an independent contract. This objection is certainly not sustained by the record; because the plea emphatically alleges that the note sued on, as well as another note was executed not only in consideration of certain lands specified, but “also for and in consideration of a certain improvement,” &c. The other cause of demurrer is that as the plea must be taken strongest against the pleader, it must be intended that the promise to deliver the possession of the improvement on the public lands alleged in the plea was a verbal promise, and being such and a “contract” for an interest concerning lands, was void under the statute, (Dig. p. 540, sec. 1,) and consequently could not be the ground of a cross action, so as to bring it within the rule of re-coupment. To admit all this would avail the plaintiff nothing at all, because a cross action would still lay to recover back such portion of the consideration as was made void by law and not against public morals: and besides, we have seen, in the case of Withers v. Green, (9 How. R. 230,) that in a proper case a party may recoupe as well for protection as for compensation. The record shows that Whorton was present in court, prayed an appeal, and filed his affidavit. Finding no error in the record, the judgment must be affirmed,