Richard F. Kuhnen, J.
This motion for summary judgment in lieu of complaint under CPLR 3213 was brought by plaintiff based upon a promissory note signed by defendants on November 6, 1972. Plaintiff’s affidavit alleges that there is a principal balance of $1163.79 plus interest of $5.04 due and unpaid. Defendants have not filed answering affidavits but rely on the affidavits of their attorney. Those affidavits, while admitting the execution of the note, allege that plaintiff may have improperly computed the rebates due on a prior loan from plaintiff to defendants. Defendants also raise several affirmative defenses' and counterclaims based upon violations of the Federal Truth in Lending Act (US Code, tit 15, § 1601 et seq.) and section 353 of the New York Banking Law which incorporates the Truth in Lending Act by reference.
On April 20, 1972 plaintiff made a cash loan to defendants in exchange for their promissory note in the amount of $1,195.46 payable in 36 monthly installments. The interest on the loan was deducted in advance. On November 6, 1972 defendants renewed their loan by taking an additional cash advance and executing a second promissory note which is the basis of this suit. The total cash advance on the second loan was computed by deducting (1) the prepaid interest, (2) the amount due on the first loan less the rebate for prepaid interest and insurance, and (3) charges for insurance and filing fees.
Defendants’ contention that plaintiff improperly calculated *228 the interest and insurance rebates on the first loan is merely a conclusory allegation unsubstantiated by fact. Defendants themselves have not denied that they received the amounts as alleged in plaintiffs affidavits. Defendants have offered only the statements of the attorney "upon information and belief’ that plaintiff may have failed to properly calculate the rebates. These allegations are not sufficient to create an issue of fact to defeat the motion. (Seaman-Andwall Corp. v Wright Mach. Corp., 31 AD2d 136, affd 29 NY2d 617; Leumi Fin. Corp. v Richter, 24 AD2d 855, affd 17 NY2d 166.)
Defendants also raise two counterclaims for penalties under the Federal act (US Code, tit 15, § 1640, subd [a]) and affirmative defenses under the New York statute, all of which are concerned with two items disclosed to defendants by plaintiff pursuant to those statutes. These items are (1) that plaintiff would take a security interest in "all of the household consumer goods of every kind now owned or hereafter acquired by Debtors in replacement of said consumer goods (and proceeds) now or hereafter located in or about Debtors residence above set forth” and (2) that upon prepayment of the loan the defendants would be entitled to a rebate of the unearned portion of the finance charge computed in accordance with the "Rule of the 78’s.”
Defendants contend that each of these disclosures is inaccurate and misleading and therefore constitutes a violation of the Truth in Lending Act and section 353 of the Banking Law. Specifically defendants charge the disclosure was deficient in that plaintiff did not disclose (1) that plaintiffs security interest in after-acquired property is limited by the Uniform Commercial Code (§9-204, subd [4], par [b]) (which limits attachment of such an interest to consumer goods acquired within 10 days after the date of the agreement) and (2) that the "Rule of 78’s” as codified in the Banking Law (§ 352, subd [d], par 1) (admittedly used by plaintiff) allows an exclusion for an irregular first installment.
Taking the Federal counterclaims first, plaintiff argues that they do not state a cause of action since they are not brought within the one-year limitation set forth in the Federal act (US Code, tit 15, § 1640, subd [e]). Defendants contend that although the one-year period has expired they are entitled to an equitable recoupment under CPLR 203 (subd [c]) up to the amount of plaintiffs claim.
Although both sides have assumed that the application of *229 New York law is appropriate to determine whether these Federally created rights can be revived in the instant situation, the court is not convinced of such a principle. (See Burnett v New York Cent. R. R. Co., 380 US 424, 433.) However, an academic discussion of whether Federal or State authorities apply is unnecessary since the rules of law in either case provide the same result.
The general rule in New York is that where a statute creates a cause of action unknown to the common law and attaches a time limit within the same statute, that limitation is a condition or element of liability and it cannot be tolled or extended. (Romano v Romano, 19 NY2d 444; see, also, Howard v Robinson, 32 AD2d 837.) However, this rule is not absolute and it remains a question of legislative intent whether the limitation is to be construed as a condition of the right or merely a Statute of Limitations which can be tolled. (See Sharrow v Inland Lines, 214 NY 101.)
The Federal rule is similar. In American Pipe & Constr. Co. v Utah (414 US 538, 559) the court stated that "the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of the suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.”
Thus, preliminary to the question of whether the counterclaim is in the nature of recoupment (see Bull v United States, 295 US 247) is whether the limitation can be tolled consistently with the purpose of the legislation.
In Conrad v Home & Auto Loan (53 AD2d 48), the court held that "plaintiffs were entitled to recover a statutory penalty if they had instituted an appropriate action within one year.” The facts in that case indicate that the entire debt due to defendant had not been paid at the time of the commencement of the action. Therefore, it must be concluded that the court rejected the theory of equitable recoupment to save the claim. (See opn of Supreme Ct, Conrad v Home & Auto Loan, 81 Misc 2d 834, 839.)
Significantly, section 1640 of title 15 was amended in 1974 to add subdivision (h) which states: "A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owing to such creditor by such person, unless the amount of the creditor’s liability to such *230 person has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party.”
This language plainly indicates an intent to limit rather than extend liability. (See Kristiansen v Mullins & Sons, 59 FRD 99, 107.) Thus, the Federal claims not having been brought within the one-year period are unavailable to defendant by way of recoupment.
It can readily be seen that this result is not unfair when it is recognized that at the expiration of the time limit these defendants lost forever their right to assert their Federal claim in a Federal forum. This is clear since plaintiff could not bring its action in a Federal court. Thus, it is perfectly consistent that if the Federal courts have no jurisdiction after one year that the jurisdiction of a State court is likewise limited.
The State claim, however, if sustained, would bar recovery of the unpaid principal. (Cf. General Obligations Law, §§ 5-511, 5-513.) The court must view sections 353 and 358 of the Banking Law under the established principles of New York law and the leading case on these provisions is Di Nome v Personal Finance Co. of N.Y. (291 NY 250, 253). There the court stated: "Then, too, a failure to obey section 353 not only deprives the lender of all right to collect or receive any principal, interest or charges whatsoever, but makes the lender guilty of a misdemeanor as well. (§ 358.) A provision which imposes such a forfeiture should be strictly construed and should not be held to include any alleged violation which is not clearly within the plan intention of the statute. [Citation.] Furthermore, when conduct is thus to be visited with loss or impairment of liberty or property, clear and exact definition of the offense is called for.”
In Di Nome the court held that the failure of the lender to set forth the terms of an acceleration clause in the disclosure statement did not amount to a violation of the statute. The court reasoned that (pp 252-253) "[s]o unwieldy a recital * * * would inevitably tend to defeat the straight mandate of section 353 for a clear and distinct statement of the primary items of a small loan transaction.”
The omissions cited by the defendants herein are not significant enough to justify forfeiture of the loan. These omissions, similar to the one in Di Nome, would require explanations *231 which could well detract from an otherwise clear and understandable statement of the essentials of the contract.
Defendants, however, argue that the failure to disclose the limitation of the Uniform Commercial Code (§ 9-204, subd [4], par [b]) will result in a bargaining advantage to the creditor when the debtor fails to keep his payments current. This argument is a strained one since it is unlikely that a debtor’s knowledge or lack of knowledge of section 9-204 of the Uniform Commercial Code will affect his ability or willingness to pay his creditors. Nor is it shown that plaintiff has asserted or has threatened to assert a right in any property of the defendants in which it does not hold a security interest.
Furthermore, even if plaintiff did threaten to assert such an invalid security interest such an act is unrelated to the making of the loan. That is, that act, while it may constitute an improper collection technique (at which the subject legislation is not aimed, cf. General Business Law, art 29-H), can in no way be viewed as a misleading inducement to a potential borrower. The time element itself of the "potential” improper conduct clearly precludes this. It is also apparent that such an improper threat or assertion will more likely damage a competing unsecured creditor than the borrower since the underlying debt is legitimate.
Finally, the court notes defendants’ reliance on several Federal court decisions in support of this contention (see, e.g., Pollack v General Finance Corp., 535 F2d 295). However, in those cases the courts did not consider section 353 of the New York Banking Law and the authorities interpreting it.
Defendants also contend that the failure to disclose the exemption for an irregular payment period in computing rebates under section 352 (subd [d], par 1) violates the relevant portions of Federal Reserve Board regulation Z which require (a) disclosure of any prepayment penalty (12 CFR 226.8 [b] [6]) and (b) disclosure of any deduction from the rebate of the unearned finance charge (12 CFR 226.8 [b] [7]).
The first part of this argument is easily answered. Subdivision (b) of section 226.818 of regulation Z flatly states that "Section 226.8(b)(6) relates only to charges assessed in connection with obligations which do not involve precomputed finance charges included in the obligation.” Thus, the section further explains, the difference between rebates computed by the actuarial method and the "Rule of 78’s” method is not a penalty under 12 CFR 226.8 (b)(6). Likewise, the difference *232 between the "Rule of 78’s” method and the New York version of that method is not a penalty. (See, generally, Hunt, The Rule of 78: Hidden Penalty for Prepayment in Consumer Credit Transactions, 55 B U L Rev 331.)
Neithér can the second part of defendants’ argument be adopted for two reasons. First, section 352 (subd [d], par 1) can reasonably be described as the "Rule of 78’s” despite its minor statutory variation. (See Security Nat. Bank v Crane, 74 Misc 2d 992; 55 B U L Rev 331, 355, n 22, supra.) Furthermore, to require an explanation of the exemption permitted by section 353 and when and how it will affect a rebate will require precisely the detailed mathematical descriptions which regulation Z declares should not be used. (12 CFR 226.818 [c].)
Second, the statutory exemption permitted under the New York provision does not constitute a charge "that may be deducted from the amount of any rebate of [the] unearned finance charge” (12 CFR 226.8 [b] [7]). This is clear since the rebate of the unearned finance charge is calculated according to the Banking Law (§ 352, subd [d], par 1) which includes the exemption in its method. There is no charge that is deducted under the statutory calculation which reduces the "rebate of such unearned finance charge.” (Cf. 55 B U L Rev 331, 353-355, supra.) Furthermore, this situation is analogus to other required disclosures where minor irregularities are to be disregarded in the interests of clarity. (12 CFR 226.5 [d], 226.503, 226.505.)
Finally, defendants, in addition, state that it is well known that a major lender licensed in New York other than plaintiff does not take advantage of the exemption permitted by section 352 (subd [d], par 1). If that is the case, there is nothing preventing such a lender from advertising that under certain circumstances its loan might be cheaper and therefore more attractive to a borrower. The disclosure laws with which we are concerned are primarily designed to prevent an unwary borrower from accepting credit without a practical understanding of the consequences. To require a lender to explain the pros and cons of an irregular initial payment period upon prepayment under the New York statutory method would require details that would surely detract from the borrower’s over-all understanding of the transaction.
Judgment for plaintiff in the amount of $1,168.83 plus interest from May 13, 1976 at 6% per annum together with costs and disbursements.