# PACIFIC CONCRETE FEDERAL CREDIT UNION, Plaintiff-Appellee, *v.* ANDREW J. S. KAUANOE, aka A. J. S. KAUANOE, aka ANDREW KAUANOE, Defendant-Appellant

## NO. 6362

JULY 17, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendant-appellant Andrew J. S. Kauanoe appeals from a circuit court decision granting summary judgment in favor

of plaintiff-appellee Pacific Concrete Federal Credit Union. We reverse.

Appellant entered into two loan transactions with appellee totalling $6,216.02 on August 22, 1974 and October 1, 1974. On May 5, 1976 appellee sued appellant for $4,646.32, the outstanding balance owing on the loans. In his answer and counterclaim appellant alleged several violations of the federal "Truth in Lending" statute — the Consumer Credit Protection Act, 15 U.S.C.A. § 1601 *et seq.* 1968)[1] (hereinafter referred to as TILA).

On August 11, 1976 appellee filed a motion for summary judgment alleging that the Truth in Lending counterclaim was barred by Section 1640(e)[2] of the Act requiring actions under the Act to be brought within one year from the date of the violation. Appellee also attached affidavits and exhibits on the issue of the sums due and owing. The Circuit Court of the First Circuit entered an order granting the motion in all respects on September 7, 1976. Appellant raises two main issues:

I. Whether the circuit court erred in granting the motion for summary judgment where the affidavits were not made on personal knowledge and did not set forth facts admissible in evidence.

II. Whether the circuit court properly ruled that appellant's counterclaims under TILA were barred by the statute of limitations section contained in § 1640(e) of TILA.

We find that the circuit court erred on both points and reverse the judgment entered below.

---

[1] Specifically, appellant alleged that appellee did not meet the regulations under 15 U.S.C.A. § 1601 *et seq.* requiring disclosure of certain aspects of the loan including finance charges, total and number of payments, right of acceleration, annual percentage rate, security interest and the method of computation.

[2] That section states:

(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

I.

Attached to appellee's motion for summary judgment were the affidavits of S. A. Higa, weighmaster of Pacific Concrete and Rock Co., Ltd., and Tetsuo Takushi, appellee's assistant treasurer. Also attached were two exhibits, copies of checks and vouchers issued to appellant.[3] These vouchers and checks indicated two loans totalling $4,500. Appellant argues that Mr. Takushi's affidavit was not based on his own personal knowledge of the notes but on a ledger upon which are recorded all payments made by appellant pursuant to the notes. Because the ledger had not been attached to the affidavit, any information therefrom was inadmissible and should not have been considered by the circuit court.

Appellee responds that Mr. Takushi's affidavit avers that he personally tendered the vouchers and checks, copies of which were attached as exhibits and that this statement is sufficient to demonstrate personal knowledge.

Hawaii Rule of Civil Procedure 56(e)[4] sets out the form that affidavits supporting summary judgment motions should take. The rule requires that facts set forth in the affidavits be admissible in evidence. All papers referred to in the affidavits must also be attached and sworn to or certified. These requirements are mandatory. As we pointed out in *Cane City*

---

[3] The affidavits also referred to promissory notes executed by appellant on the debts in question and were attached to appellee's original complaint as exhibits.

[4] Hawaii Rule of Civil Procedure 56(e) reads in its entirety:

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Builders v. City Bank,* 50 Haw. 472, 443 P.2d 145 (1968) mere statements in affidavits do not authenticate exhibits referred to unless these exhibits are sworn to or certified.

Appellee's assistant treasurer referred to a ledger from which he noted the payments made by appellant. However, no copies of the ledger were attached and thus this information was improperly before the court.[5] Although copies of the checks and vouchers referred to were submitted as exhibits, they were neither certified nor sworn to and thus could not be verified as authentic. Given the inadmissibility of these materials, there exists a genuine issue as to the amounts due and owing on appellant's loans and summary judgment was therefore improper.

## II.

Appellant's second claim is that the circuit court erred in granting summary judgment on his counterclaim alleging Truth in Lending violations. Although § 1640(e) of the Act requires actions to be brought within one year from the date of the violations,[6] his counterclaim is in the nature of a recoupment defense and thus may be brought regardless of any statute of limitations. Consequently, § 1640(e) would bar the claim if it had been brought as an affirmative action; however, as a recoupment defense to diminish or defeat appellee's charges, it does not fall within the one-year requirement.

---

[5] The standard for admitting materials supporting motions for summary judgment is the same as for evidence presented at trial. 6 MOORE'S FEDERAL PRACTICE § 56.22, at 56-1321 (2d ed.). Affiant's testimony as to what was in the ledger was inadmissible hearsay and because it would not have been admissible at trial as an exception to the hearsay rule, it should not have been considered by the circuit court.

[6] In loan transactions the statute begins to run at the moment a loan transaction is consummated. Lawson v. Conyers Chrysler, Plymouth, etc., 600 F.2d 465 (5th Cir. 1979); Bartholomew v. Northampton National Bank of Easton, 584 F.2d 1288 (3d Cir. 1978); Goldman v. First National Bank of Chicago, 532 F.2d 10 (7th Cir. 1976); Wachtel v. West, 476 F.2d 1062 (6th Cir. 1973), *cert. denied* 414 U.S. 874 (1973); Strader v. Beneficial Finance Co. of Aurora, Colo. App., 534 P.2d 339 (1975); Conrad v. Home & Auto Loan Co., Inc., 366 N.Y.S.2d 850 (1975).

Appellee responds that the general rule is that a recoupment claim may be allowed notwithstanding any statute of limitations; however, since appellant's TILA claims are not in the nature of recoupment but rather are set-offs, the claims therefore must be brought within one year from the date of the loan transactions.

## DOCTRINE OF RECOUPMENT

The term "recoupment" developed under principles of common law and described a claim that defendant could assert against plaintiff only if it arose from the same transaction as plaintiff's claim. It is in the nature of a defense and can only be asserted to reduce, diminish or defeat the plaintiff's claims. A unique characteristic of common law recoupment is that it permits the defendant to raise a claim without regard to the statute of limitations which would apply if the defendant brought an affirmative action on the same claim. WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 1401 (1971).

Hawaii has recognized "recoupment" in a number of cases distinguished it from "set-off" which arises out of a separate transaction, unrelated to plaintiff's claim. *Hong Hoon v. Lum Wai*, 26 Haw. 546 (1922); *Oahu Railway Co. v. Waialua A. Co.*, 16 Haw. 520 (1905); *Erickson v. Volcano Stables and Transportation Co.*, 13 Haw. 428 (1901). In *Erickson* we stated at 430:

> Set-off and counter claim are purely statutory defenses while recoupment is a common law defense. The Supreme Court of Michigan distinguishes between set-off and recoupment as follows: "This defense" (recoupment) "is contradistinguishable from set-off in three essential particulars: 1st. In being confined to matters arising out of and connected with the transaction or contract upon which the suit is brought. 2nd. In having no regard to whether or not such matters be liquidated or unliquidated. *Wheaton v. Dotson*, 7 Ark. 699. And 3rd that the judgment is not the subject of statutory regulations, but

controlled by the rule of the common law.'' (Citations omitted).

And our own legislature has noted the distinction between recoupment and set-off as indicated in the legislative history to HRS § 657-3,[7] the section on "Counterclaims." As the House Standing Committee Report observed:

Not covered by either section at the present time is the application of the statute of limitations to defendant's unliquidated claim arising out of the same transaction or occurrence. At common law this was deemed matter in recoupment, not a set off, and defendant could not recover any excess. *Erickson v. Volcano Stables and Transportation Co.*, 13 Haw. 428, 431. No statute is necessary to avoid the bar of the statute of limitations if a claim arising out of the same transaction is used only as matter in recoupment.

S.C. REP. NO. 527-72, 6th Leg., Reg. Sess. 888 (1972).

Determining the "timeliness" of appellant's counterclaims thus turns on whether they are in the nature of recoupment — whether they arise from the same transaction or occurrence as appellee's claims. The original action was appellee's suit to recover outstanding amounts owing on loans taken by appellant. Appellant's counterclaims allege violations in the very loan transactions which are the subject of the suit. The factual issues supporting appellant's TILA claims are the same ones forming the basis of appellee's suit.

---

[7] HRS § 657-3 reads in its entirety:

(a) In the cases enumerated in subsection (b), all the provisions of this part, or any other statute of limitations, shall apply to a claim stated as a counterclaim against an opposing party in the same manner as if an action thereon had been commenced at the time when the opposing party commenced his action or served the pleading stating his claim, or if a different time is applicable to the opposing party's claim under the provisions of this section then at that time.

(b) Subsection (a) shall apply if the claim stated as a counterclaim:

(1) Consists of a liquidated debt or demand, or a debt or demand capable of being ascertained by calculation; or

(2) Arises out of a transaction or occurrence that is the subject matter of the opposing party's claim.

(c) Within the meaning of this section a counterclaim includes a claim asserted against the plaintiff by a third-party defendant and in that situation the plaintiff is deemed as opposing party.

Appellee counters that a TILA claim does not involve a breach of the same contract. TILA violations are separate and apart from loan obligations and appellant's claims involve a different statute.

State courts in other jurisdictions have examined this same issue and have reached different conclusions based on the set-off/recoupment distinction. The pivotal point has been finding the TILA violation to arise out of the same transaction as the original loan obligation. In *Hodges v. Community Loan Investment Corp.*, 133 Ga. App. 336, 210 S.E.2d 826 (1974) the Georgia Court of Appeals characterized the debtor's counterclaims as in the nature of set-off, not recoupment. Although the counterclaim arose contemporaneously with the execution of the contract, it was not a product of a breach of any obligation or covenant therein nor was it related to the subject matter of the contract or to the plaintiff's suit. Other courts have followed the *Hodges* reasoning in finding the counterclaims to be set-offs rather than recoupment claims. *See Beneficial Finance Co. of Atlantic City v. Swaggerty*, 159 N.J. Super. 507, 388 A.2d 647 (1978); *Hewlett v. John Blue Employees Federal Credit Union*, Ala. Civ. App., 344 So.2d 505 (1976); *Ken-Lu Enterprises, Inc. v. Neal*, 29 N.C. App. 78, 223 S.E.2d 831 (1976).

On the other hand, a majority of state courts have allowed the TILA counterclaims, defining them as recoupment claims. In *Continental Acceptance Corp. v. Rivera*, 50 Ohio App.2d 338, 363 N.E.2d 772 (1976), the court stated that the defendant's TILA claim emerges from the note upon which the plaintiff's claim was grounded. The TILA claim is a recoupment because even though it may involve certain additional facts or a differing perception, it nevertheless involved the same transaction. This being so it was not barred by the statute of limitations provision. *See also Household Finance Corporation v. Hobbs*, 387 A.2d 198 (1978); *Garza v. Allied Finance Co.*, 566 S.W.2d 57 (1978); *Akron National Bank & Trust Co. v. Roundtree*, 60 Ohio App.2d 13, 395 N.E.2d 525 (1978); *Empire Finance Co. of Louisville Inc. v. Ewing*, Ky. App., 558 S.W.2d 619 (1977). *But see Public Loan Company*,

*Inc. v. Hyde,* 89 Misc.2d 226, 390 N.Y.S.2d 971 (1977); *Shannon v. Carter,* 282 Or. 449, 579 P.2d 1288 (1978).

We adopt the latter line of cases finding that appellant's claims were indeed in the nature of a recoupment defense. His allegations of TILA violations centered around appellee's failure to disclose fully certain aspects of the loan. These loans were the very ones that were the subject of appellee's claims. As the court in *Household, supra* asserted, it seems "inescapable that credit terms are an integral part of a loan transaction." *Id.* at 200. We find that appellant's claims arose out of the same loan transaction as appellee's suit and as such was a recoupment defense to diminish plaintiff's recovery.

Allowing appellant's counterclaims is also most consistent with furthering the overall purpose and intent of the TILA.[8] The general provision of the Act, § 1601, states:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is

---

[8] Commentators and authorities have noted that the tolling of statutes of limitations turns on a substantive-procedural analysis. The general rule is that a procedural statute of limitations extinguishes only the right to enforce the remedy and not the substantive right itself. However, the running of a substantive limitation extinguishes the statutory right itself. 51 Am. Jr.2d, Limitation of Actions, § 15. *See also* "Truth in Lending and the Statute of Limitations," 21 Vill. L. Rev. 904, 918 (1975); "Developments in the Law," 63 Harv. L. Rev. 1177 (1950). Thus, the distinction may be crucial, determining the bringing or barring of a suit. In 1974 the United States Supreme Court in American Pipe and Construction Co. v. Utah, 414 U.S. 538 (1974) rejected the substantive-procedural distinction stating that the test for tolling a statute of limitations is "whether tolling the limitation in a given context is consonant with the legislative scheme." *Id.* at 558. After examining the "scant legislative history of Sections 4B and 5(b) of the Clayton Act," the Court concluded that tolling the statute of limitations in the Act would not be inconsistent with its legislative purpose. *Id. See* Burnett v. New York Central R. Co., 380 U.S. 424 (1965).

Section 1640(e) of the TILA could be characterized as a substantive statute of limitations since it is contained in a statute which creates a right and is a part of the substantive law creating the right of action. However, in view of the move away from any sort of substantive-procedural distinction, this classification is inconsequential and we look to the purpose behind the TILA to determine whether tolling is warranted.

the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. Thus, the TILA seeks to protect the consumer by ensuring full disclosure of credit cost. Creditors are required to disclose clearly and conspicuously certain terms of the loan and failure to so comply could result in liability up to $1,000.[9] Debtors are better able to determine for themselves the reasonableness of the credit charges imposed and "comparison shop" for loans. The resulting competitive market among lenders benefits all consumers.[10]

Denying debtors their counterclaims in this situation could work an injustice and undercut the aim of the TILA. The typical consumer is unaware of his rights under the Act until his creditor files suit to collect on the loan and the debtor is forced to consult an attorney. Creditors will be encouraged to wait until after the one-year period before bringing suit, confident that debtors' claims will be barred. As the Supreme Court of New York, Appellate Division, so aptly stated in *Lincoln First Bank of Rochester v. Rupert*, 60 A.D.2d 193, 400 N.Y.S.2d 618, 620:

> Thus, the holding, urged by respondent, that a consumer should be barred by the one-year limitation from asserting a Federal Truth in Lending Act counterclaim where the creditor has not commenced suit until the one-year

---

[9] Section 1640(a) allows civil liability for twice the amount of the finance charge in connection with the transaction but not less than $100 nor greater than $1,000 and in the case of a successful action to enforce such liability, the costs of the action together with reasonable attorney's fees.

[10] Senator William Proxmire, a major sponsor and supporter of the TILA testified extensively at Senate debates on the Bill:

> It will provide the average person with the information he needs to use credit and to shop wisely for credit. It will end the present system of confusing credit practices and credit terminology which requires a trained mathematician to understand. It will disclose the cost of credit in clear and simple terms to the average consumer so that he can understand fully the extent of the credit and how it compares to rates being charged by other lenders. I believe this bill will save the American consumer millions of dollars a year in credit charges and will prevent millions of families from being saddled down with excessive debt.

113 CONG. REC. 18400 (1967) (remarks of Sen. Proxmire).

period has expired, would frustrate the very purpose and spirit of the legislation. It would permit an unscrupulous creditor, by the simple expedient of withholding suit against an uniformed or trusting borrower, to ignore the disclosure requirements with the assurance that the borrower's truth-in-lending claims would be barred if he should be alerted to the creditor's violations when suit is finally commenced. We reject such an anomalous and unjust construction as contrary to the very ends Congress sought to achieve by enacting the legislation.

In addition, statutes of limitations are primarily designed to prevent stale claims and assure fairness to defendants and do not bar defenses such as recoupment. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Burnett v. New York Central R. Co.*, 380 U.S. 424, 428 (1965).

Section 1640(e), the statute of limitations provision of the TILA serves to further enforcement of the Act's civil liability provisions by ensuring the prompt bringing of suits. Deterrence of lenders' violations rather than compensation of borrowers is the goal. Thus, allowing a borrower's claims under the Act as a defense to the lender's original suit is in keeping with this overall scheme.

Appellee raises an additional argument that the result sought by appellant would be inconsistent under the amendment to the Act.[11] Under this section, damages pursuant to the Act cannot be asserted because appellant's TILA claims

---

[11] That amendment is Section 1640(h), amended in 1974 to read:

(h) A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party.

were not determined by a court of competent jurisdiction in an action to which the appellee was a party. The *Ken-Lu, supra* case was cited in support of this argument. There a North Carolina Court of Appeals interpreted the section to bar all counterclaims or defenses under the TILA until a creditor's civil liability had been determined by a proper court judgment.

This interpretation has been expressly rejected by several other courts who interpreted the section to apply only in situations where debtors tried to deduct unilaterally from the amounts owing because of alleged TILA violations. *Lincoln First Bank of Rochester v. Rupert, supra; Stephens v. Household Finance Corp.*, Okl., 566 P.2d 1163 (1977); *Reliable Credit Service, Inc. v. Bernard,* 339 So.2d 952 (1976).

Legislative reports on the Amendment indicate that these holdings are most consistent with its purpose.

> The Committee amended bill also provides that a consumer may not recover damages (other than actual damages) by right of offset unless the consumer was a party to a court action in which the liability was determined. This provision is intended to prevent consumers from simply deducting from their obligation to a creditor the minimum $100 award, which is provided for in individual actions, without being a party to an action in which such a liability is determined by a court. However, nothing in this section prevents a series of individual civil actions to recover $100 in the case of any violation.

S. Rep. No. 93-278, 93d Cong., 1st Sess. 16 (1973). A subsequent bill to the TILA entitled "The Truth in Lending Simplification and Reform Act" would amend § 1640(h) to expressly allow recoupment claims. The section-by-section analysis of the bill states:

> SEC. 14. Set-off rights. — Would amend section 130(h) of the Truth in Lending Act to make clear that this section, which prohibits a borrower from offsetting Truth in Lending damages against a debt owed unless a court has found a Truth in Lending violation, does not prohibit a borrower from raising a creditor's violation by way of recoupment or similar doctrine where permitted by State

law. It was Congress' intent in enacting this section in 1974 to prohibit a debtor from unilaterally offsetting alleged damages, but not to prohibit the borrower from seeking an offset in a legal action. This amendment will supersede an erroneous court decision on this subject.

123 CONG. REC. 11337 (1977). Appellant has not attempted singly to deduct any amounts from the debts owed. Rather, in the current instituted suit he alleged as a counterclaim certain TILA violations on appellee's part. These allegations were made to obtain a judicial determination of all claims relating to the loan transaction at one time. An approach such as the one taken in *Ken-Lu, supra,* would result in a complete bar to the assertion of any TILA claims as defenses in creditors' actions. Such a drastic result was not contemplated by its drafters and would severely undercut the spirit of the Act. Appellant should be allowed his claims.

Reversed.

*Richard S. Kanter,* Legal Aid Society of Hawaii, for defendant-appellant.

*George Y. Kimura* and *Leslie C. Togioka* for plaintiff-appellee.