KEN-LU ENTERPRISES, INC. v. PAULINE NEAL

No. 7521DC745

(Filed 7 April 1976)

1. **Limitation of Actions § 4— counterclaim under Truth-In-Lending Act — statute of limitations**

   In an action to recover under installment sales contracts, the 10-year limitation period of G.S. 1-47(2) for counterclaims on sealed instruments did not apply to permit defendant to file a counterclaim for damages under the Federal Truth-in-Lending Act after the one-year limitation of that Federal Act since G.S. 1-47(2) is inconsistent with the 1974 amendment to the Federal Act, 15 U.S.C. § 1640(h).

2. **Pleadings § 11— actions on evidences of debt — counterclaim under Truth-In-Lending Act**

   Defendants who are sued on evidences of debt may not assert potential liability of the creditor under the Federal Truth-in-Lending Act as a counterclaim or defense in such action so far as any damages other than actual damages.

APPEAL by defendant from *Clifford, Judge.* Order entered 29 July 1975 in District Court, FORSYTH County. Heard in the Court of Appeals 14 January 1976.

On 14 May 1975, plaintiff, Ken-Lu Enterprises, Inc., filed this action against defendant Neal, alleging that defendant was in default on a series of four installment sales contracts, entered into between defendant and plaintiff on 14 December 1972, 20 March 1973, 10 October 1973, and 1 November 1973, and seeking possession of the items sold pursuant to those con-

tracts, and $433.10 plus reasonable attorney's fees, interest, and costs.

Defendant filed and served upon plaintiff an answer and counterclaim on 11 June 1975. Defendant's counterclaim sought to recover statutory damages, attorney's fees and costs from plaintiff based on violations in each of the aforesaid installment sales contracts of the Federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.,* (hereinafter the "Act") and Federal Reserve Regulation Z, 12 C.F.R. Part 226 adopted by the Board of Governors of the Federal Reserve System pursuant to the Act. Defendant asserted in her counterclaim that the district court had jurisdiction of the counterclaim by virtue of 15 U.S.C. § 1640 (e) and G.S. 1-47 (2).

Plaintiff filed a motion seeking dismissal of defendant's counterclaim "on the ground of failure to comply with the one-year statute of limitation of the Truth-in-Lending Act, 15 U.S.C. § 1640 (e)." Plaintiff further moved for judgment on the pleadings as to its claim for relief. The court entered an order granting plaintiff's motion to dismiss defendant's counterclaim and denying plaintiff's motion for judgment on the pleadings. Plaintiff's motion to dismiss defendant's counterclaim was granted on the grounds that "the defendant's counterclaim is barred by the applicable federal statute of limitations and by the October 28, 1974, amendment to the said [Truth-in-Lending] Act as contained in 15 U.S.C. § 1640 (h)."

From that portion of the court's order dismissing her counterclaim, defendant appeals.

*A. Carl Penney, for plaintiff appellee.*

*Jim D. Cooley and Gerald C. Kell, for defendant appellant.*

MARTIN, Judge.

The issue for our determination is whether the one-year limitation in the Federal Truth-in-Lending Act and the October 28, 1974 amendment to the Act as contained in 15 U.S.C. § 1640 (h) bar the instant counterclaim.

Defendant admits that she did not file within the Act's one-year period, but contends that G.S. 1-47 (2) permits such a filing within ten years under the following circumstances:

"Upon a sealed instrument against the principal thereto. Provided, however, that if action on a sealed instrument is

filed, the defendant or defendants in such action may file a counterclaim arising out of the same transaction or transactions as are the subject of plaintiff's claim, although a shorter statute of limitations would otherwise apply to defendant's counterclaim. . . ."

As Professor Navin noted with respect to G.S. 1-47(2) in 48 N.C. L. Rev. at 548, "[p]rior to 1969, a buyer who signed a negotiable promissory note as part of a consumer credit transaction could have found himself being sued by the holder when the statute of limitations on any claim he had against the seller had long since run. . . . An enactment by the 1969 General Assembly attempted to deal with . . . [this problem]. This legislation amended the statute of limitations section concerning sealed instruments to provide that the maker of the sealed instrument can assert any claim arising out of the transaction against . . . the plaintiff . . . even though a shorter statute of limitations would otherwise bar such a claim. . . . The Act . . . states that the purpose underlying it is 'to insure that if a suit may be maintained on a contract against one contracting party, the other contracting party will not be allowed to escape his contractual obligations by the passage of time or the transfer of contract rights.' "

In some states, though not in all, the courts will permit the consumer to counterclaim for damages if the creditor sues to collect on the transaction in which the breach occurred, even when the creditor's suit is brought several years after the transaction. This is a loophole in the one-year cutoff rule that exists in a number of states. Truth-in-Lending is a federal law which should be uniformly applied to consumers in all states. However, the courts are divided in a situation where a creditor sues a consumer to collect on a debt and the consumer wants to counterclaim for damages for breach of Truth-in-Lending, and where the loan and the truth-in-lending violation are more than one year old.

One case decided February 12, 1974, involved a home improvement contract on which the consumer defaulted after two years. The contractor sued to foreclose his mortgage and the consumer counterclaimed for damages for an alleged violation of Truth-in-Lending. However, the consumer's counterclaim was not allowed because he had requested damages more than a year after the alleged violation occurred. *Gillis v. Fisher Hardware Co.*, 289 So. 2d 451 (Fla. App. 1974).

In *Hodges v. Community Loan and Investment Corp.*, 133 Ga. App. 336 (1974), decided September 1974, the borrowers were not allowed to maintain their counterclaim for violation of the Federal Truth-in-Lending Act since the lender's action was initiated after the expiration of the Truth-in-Lending limitation period. In this Georgia case, the Court noted that the ". . . Truth-in-Lending claim is not an integral part of the action for money had and received; it is merely ancillary to that action." Further, the Court went on to say that that statute which extends the limitation period for counterclaim and cross-claims is not as broad as that in some other states. The Georgia statute of limitations states:

> "The limitations of time within which various actions may be commenced and pursued within this state to enforce the rights of the parties are extended, only insofar as the enforcement of rights which may be instituted by way of a counterclaim and cross-claim, so as to allow parties, up to and including the last day upon which the answer or other defensive pleadings should have been filed, to commence the prosecution and enforcement of rights by way of counterclaim and cross-claim *provided that the final date allowed by such limitations for the commencement of such actions shall not have expired prior to filing of the main action.*" (Emphasis supplied.)

Upon motion for rehearing, the borrowers raised the contention that their counterclaim was in the nature of recoupment, and that therefore the Truth-in-Lending statute of limitations should not be a bar thereto.

The court, in denying motion for rehearing, answered that ". . . the Truth-in-Lending counterclaim . . . did not arise out of the mutual obligations or covenants of the loan transaction upon which this suit was founded. . . ." Rather, it said that the borrowers' claim for recovery of a penalty created by federal law was an "extrinsic byproduct" of this transaction and was not dependent upon the lender's contractual obligations. Accordingly, the court said, the borrowers' counterclaim is in the nature of setoff, not recoupment. As such, it is subject to the statute of limitations stated in the federal statute creating the penalty.

In two other cases, however, the Courts have decided the identical question in favor of the consumer. In one of them, a

finance company sued the consumer for the deficiency after it repossessed and sold an automobile when the consumer defaulted on an installment. The Court permitted the consumer to counterclaim for $1,000 in damages for Truth-in-Lending violations although more than a year had passed since the sale of the car. *Wood Acceptance Co. v. King,* 309 N.E. 2d 403 (Ill. App. 1974). In accordance was *First Nat'l City Bank v. Drake,* (N.Y. Civ. Ct., September 27, 1973). The Court denied damages in this case, however, because the breach was the result of an inadvertent trivial clerical error.

In *Wood Acceptance Co. v. King, supra,* decided February 22, 1974, the defendant admitted that he did not file within the Act's one-year period but contended that section 17 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 18) permits such a filing. It provides:

"A defendant may plead a set-off or counter claim barred by the statute of limitation, while held and owned by him, to any action, the cause of which was owned by the plaintiff or person under whom he claims, before such set-off and counter claim was so barred, and not otherwise."

The Court in the Illinois case noted that:

"The rationale generally stated for holding that compliance with fixed limitations within the statute is indispensable to the maintenance of a right thereunder is that the statutes create rights unknown to common law, fixing a time within which the action may be commenced, which element is such an integral part of the enactments that it necessarily is a condition of the liability itself and not on the remedy alone. A statute of limitations, on the other hand, applies only to the remedy, is procedural in nature and may therefore be waived. (Citations omitted.)"

The Court further states that:

"Although our research into the congressional hearings on the enactment of the Federal Truth in Lending Bill fails to disclose the purpose behind the one year filing period, we note that the Act is intended to safeguard the consumer in connection with the utilization of credit and the enforcement of the Act is accomplished largely through the institution of civil actions. For this reason, no provision was made for investigative or enforcement machinery at the federal

level on the assumption that the civil penalty section would secure substantial compliance with the Act. The placement of such responsibility on the often unknowledgeable consumer lends support for the conclusion that the penalty sought to be imposed on violators of this Act should not be circumvented where the debtor's obligation is not stale and is raised by way of a section 17 counterclaim arising out of the same occurrence. We conclude that the one year limitation in which to bring the federal right is not such an integral part of the Federal Truth in Lending Act as to outweigh the combined purposes of that Act and section 17 of the Limitations Act."

Effective October 28, 1974, the Act was significantly amended by Section 408 (d) of Public Law No. 93-495. One of the amendments, now codified as 15 U.S.C. § 1640 (h), provides:

"(h) A person may not take *any action* to offset any amount for which a creditor is *potentially* liable to such person under subsection (a) (2) [15 U.S.C. § 1640 (a) (2)] of this section against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person *has been determined by judgment* of a court of competent jurisdiction in an action to which such person was a party." (Emphasis supplied.)

As Ralph C. Clontz, Jr., stated in the 1975 Cumulative Supplement to the Third Edition of his Truth-in-Lending Manual in reference to the aforesaid amendment:

"Beyond any question, this new subsection provides that unless a creditor's civil liability for disclosure errors under § 130 (a) (2) [15 U.S.C. § 1640 (a) (2)] of the Act has been determined by a proper court judgment, such *potential* liability may not be used as an excuse for failure to make required payments, nor could the debtor deduct such 'potential civil penalty' from his total unpaid obligation due the creditor unless judgment has been previously entered, establishing the consumer's right to collect the Truth-in-Lending statutory penalties.

The civil penalties referred to are those provided by Section 130 (a) (2) of the Act, which specifies the 'automatic civil penalty' (twice the amount of the finance charge— minimum, $100; maximum, $1,000) in individual actions and also covers the liability of creditors in class actions

for the civil penalty of the lesser of $100,000 or one per-cent of the net worth of the creditor. However, we recall that Section 130 (a) (1) of the Act additionally now author-izes consumers to recover any *actual* damages proximately caused by a Truth-in-Lending or Regulation Z violation, and such potential *actual damages* could be asserted as an offset against the consumer's debt to the creditor.

To the author, this new subsection also seems clearly to establish that unless a creditor's civil liability for disclosure errors under Section 130 (a) (2) [15 U.S.C. § 1640 (a) (2)] of the Act has been determined by a proper court judg-ment such *potential* liability may *not* be asserted as a de-fense in any action brought by the creditor to collect the unpaid balance owed by the consumer in the consumer credit transaction in which the violation occurred. . . ."

[1] This amendment to the Act, if construed in accord with Clontz's interpretation, should produce a desirable result: a uniform application of the Act to consumers in all states. Fur-ther, G.S. 1-47 (2) cannot be utilized to allow the counterclaim since it is inconsistent with the new amendment. 15 U.S.C. 1681.

[2] The design of the Act was to provide protection for con-sumers by affording them, through meaningful disclosure, an opportunity to compare and shop for credit. The Act should be used to protect consumers, but it should not be used to thwart the valid claims of creditors. We hold that defendants who are sued on evidences of debt may not assert potential liability of the creditor under the Truth-in-Lending Act as a counterclaim or defense in such action, so far as any damages other than actual ones.

Accordingly, the judgment of the superior court dismiss-ing the defendant's counterclaim is affirmed.

Affirmed.

Judges VAUGHN and CLARK concur.