In re Se. Eye Ctr. (CCSEA v. Matthews), 2016 NCBC 57.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1648

IN RE SOUTHEASTERN EYE CENTER-
PENDING MATTERS

ORDER AND OPINION ON PLAINTIFF'S
MOTION TO DISMISS AND TO STRIKE
AND DEFENDANT'S MOTION TO
DISMISS
(CCSEA v. MATTHEWS)

{1}     **THIS MATTER** is before the Court upon (i) Plaintiff Central Carolina Surgical Eye Associates, P.A.'s ("Plaintiff" or "CCSEA") Motion to Dismiss Second Counterclaim and to Strike Second Counterclaim[1] ("CCSEA's Motion" or "CCSEA's Motion to Dismiss"), and (ii) Defendant John D. Matthews, M.D.'s ("Defendant" or "Dr. Matthews") Motion to Dismiss Plaintiff's First and Second Claims for Relief ("Dr. Matthews' Motion" or "Dr. Matthews' Motion to Dismiss").[2]    After considering CCSEA's Motion and Dr. Matthews' Motion, the briefs in support of and in opposition to each Motion, and the arguments of counsel at a hearing on June 14, 2016, the Court hereby **DENIES** Dr. Matthews' Motion and **GRANTS** in part and **DENIES** in part CCSEA's Motion.

> *Law Offices of Richard M. Greene, by Richard M. Greene, for Plaintiff*
> *Central Carolina Surgical Eye Associates, P.A.*
>
> *Teague Rotenstreich Stanaland Fox & Holt PLLC, by Lyn Broom and*
> *Steven B. Fox, for Defendant John D. Matthews, M.D.*

---

[1]   For clarity, the Court will reference Dr. Matthews' self-titled "Second Counterclaim" as his "Amended Counterclaims" in this Order and Opinion.

[2]  Dr. Matthews also moved to strike CCSEA's Motion for violating Business Court Rule 15.2, contending that by including a motion to dismiss and a motion to strike in the same paper, CCSEA violated BCR 15.2's requirement that "[e]ach motion shall be set out in a separate paper." Although a technical violation of the Rule, the Court concludes, in the exercise of its discretion, that striking CCSEA's Motion in these circumstances would serve no purpose other than to delay the consideration of the merits of the Motion. The Court denied Dr. Matthews' motion to strike at the June 14, 2016 hearing and memorializes that oral ruling here. The Court advises all parties, however, that it will require full compliance with the Business Court Rules going forward in this case.

*Oak City Law LLP, by Robert E. Fields, III, for Receiver Gerald A. Jeutter, Jr.*

Bledsoe, Judge.

I.

INTRODUCTION

{2}   This action is one of a number of related proceedings involving C. Richard Epes, M.D. ("Dr. Epes") or various entities that he, alone or with others, owns or controls that contain common issues of fact and law and which the Court has consolidated into a single "Master File" proceeding captioned *In re Southeastern Eye Center – Pending Matters*, 15 CVS 1648 (Wake County) (the "Consolidated Matters").

{3}   This specific lawsuit—CCSEA v. Matthews[3]—arises out of a dispute between CCSEA, formerly the operator of an ophthalmological practice in Greensboro, North Carolina principally owned and controlled by Dr. Epes, and Dr. Matthews, a physician who formerly worked at the practice and who remains a 25% shareholder of CCSEA.

{4}   The process by which the various related proceedings were consolidated in this Court and the procedures this Court has subsequently implemented to manage the Consolidated Matters are relevant to the determination of the pending Motions and thus will be discussed in some detail below.

{5}   The Court's involvement in the Consolidated Matters began on October 27, 2014, when John T. Harriott, M.D. ("Dr. Harriott") filed a complaint against CCSEA, Dr. Epes (a 75% shareholder of CCSEA), J. Mark McDaniel, Jr. (CCSEA's principal officer) ("Mr. McDaniel"), Dr. Matthews,[4] and Southeastern Cataract Laser Center, PLLC ("SCLC") in a lawsuit captioned *Harriott v. Central Carolina Surgical Eye Associates, P.A.*, 14 CVS 9982 (Guilford County) (the "Harriott Action"). The Harriott Action was designated a complex business case and assigned to the undersigned.

---

[3]  This action is captioned as *Cent. Carolina Surgical Eye Assocs., P.A. v. Matthews*, 15 CVS 7266 (Guilford County). The Court consolidated this action into the Consolidated Matters on November 23, 2015.

[4] Dr. Harriott filed a Notice of Voluntary Dismissal as to Dr. Matthews on February 13, 2015.

{6}     On February 4, 2015, Old Battleground Properties, Inc. and Nivison Family Investments, LLC filed a complaint against CCSEA, SCLC, Dr. Epes, Dr. Epes's wife, Bessie K. Epes (Dr. Epes and Bessie K. Epes collectively, the "Epeses"), Mr. McDaniel, and other related defendants in a lawsuit captioned *Old Battleground Properties, Inc. v. Central Carolina Surgical Eye Associates, P.A.*, 15 CVS 1648 (Wake County) (the "Nivison Action"). The Nivison Action was also designated a complex business case and assigned to the undersigned.

{7}     The Harriott and Nivison Actions each alleged, among other things, that the Epeses and Mr. McDaniel had operated CCSEA and various other entities that some or all of them owned or controlled to advance their personal financial benefit at the expense of various creditors of the Epeses and the Epeses' various entities.

{8}     On February 13, 2015, the Court entered an order in the Harriott Action finding substantial evidence that the Epeses' and Mr. McDaniel's conduct in connection with the operation of CCSEA and SCLC had been in furtherance of their efforts to defraud, avoid, and hinder creditors, and concluding that a receiver should be appointed with general authority to take fiscal and operational charge of CCSEA and SCLC for the benefit of Dr. Harriott and third-party creditors.

{9}     On February 25, 2015, the Court entered a similar order in the Nivison Action (the "Appointment Order"). The Appointment Order appointed Gerald A. Jeutter, Jr. (the "Receiver") to serve as a receiver for CCSEA, SCLC, and three other related entities—HUTA Leasing, LLC, Southeastern Eye Management, Inc., and EMS Partners, LLC (collectively, the "Initial Corporate Defendants"). (Appointment Order ¶ 48.)

{10}    The Appointment Order vested the Receiver with all power and authority available to a receiver under North Carolina law, including the authority to take possession and control of the Initial Corporate Defendants' assets and to assume full control and management of the Initial Corporate Defendants and any of their subsidiary entities. (Appointment Order ¶ 49.) The Appointment Order also enjoined all creditors of the Initial Corporate Defendants, including CCSEA, "from in any way

interfering with or disturbing the property and assets" of the Initial Corporate Defendants. (Appointment Order ¶ 50(l).)

{11} Through the Receiver's investigation of the Initial Corporate Defendants, it became apparent that a number of lawsuits[5] were pending in the North Carolina courts involving the Epeses, the Initial Corporate Defendants, and other entities that the Epeses owned or controlled (the "Pending Actions"). On May 13, 2015 and upon proper request, the Chief Justice of the North Carolina Supreme Court designated each of the Pending Actions (other than the previously-designated Harriott and Nivison Actions) as an exceptional case pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, and assigned those cases to the undersigned.

{12} On June 19, 2015, because each of the Pending Actions presented common issues of fact and law and the parties sought to establish interests in or the right to execute upon the same property, the Court entered an order consolidating all of the Pending Actions into the Consolidated Matters. The order directed parties in all the Pending Actions to file subsequent pleadings and documents in the Consolidated Matters, not in the individually-captioned Pending Actions. (Order on Mot. to Consolidate ¶ 5.)

{13} On June 22, 2015, the Court entered a Master Case Management Order to govern case activity in the Consolidated Matters (the "Master CMO"). In particular,

---

[5] Ultimately a total of nineteen cases were designated exceptional cases under Rule 2.1, assigned to this Court, and consolidated with the Harriott and Nivison Actions to comprise the Consolidated Matters. Ten cases in addition to *CCSEA v. Matthews* were pending in Guilford County: *Ivey v. McDaniel*, 12 CVS 11322; *Geiger v. Se. Cataract Laser Ctr.*, 14 CVS 3373; *Geiger v. Epes*, 14 CVS 3374; *Fidelity Bank v. MRPP, LLC*, 14 CVS 10078; *CIT Fin., LLC v. Cent. Carolina Surgical Eye Assocs., P.A.*, 14 CVS 10641; *Automated Opthalmics, Inc. v. Surgical Eye Ctr., Inc.*, 10 CVD 5494; *Damascus Cmty. Bank v. Cent. Carolina Surgical Eye Assocs.*, 15 CVD 3492; *Comm. Servs. for the Deaf and Hard of Hearing v. Se. Eye Ctr.*, 08 CVM 14368; *McDowell v. Se. Eye Ctr.*, 14 CVM 6539; and *Measured Dose Pharm., Inc. v. Se. Cataract Laser Ctr., PLLC*, 15 CVM 6203. Five were pending in Forsyth County: *BE Waterhouse, LLC v. Epes*, 13 CVS 7393; *BE Waterhouse, LLC v. Epes*, 11 CVS 8449; *Harriott v. Cent. Carolina Surgical Eye Assocs. PA*, 10 CVS 8690; *Adkerson Hauder & Bezney, PC v. Carolina Surgical Eye Ass'n, PA*, 09 CVS 5762; and *Int'l Sports Props., Inc. v. Se. Eye Mgmt., Inc.*, 04 CVD 1169. One case was also pending in each of the following counties: Mecklenburg County (*Flagship Capital Partners, LLC v. Se. Eye Ctr. Mgmt., Inc.*, 11 CVD 19661); Orange County (*TSI Healthcare, Inc. v. Se. Cataract Laser Center PLLC*, 14 CVS 1716); and Wake County (*Lumenis, Inc. v. Surgical Eye Center, Inc.*, 13 CVD 11264).

the Master CMO provided for the continuing litigation of the Pending Actions as Consolidated Matters and established a claims procedure to be followed by all persons with claims against the Epeses or the Initial Corporate Defendants in lieu of filing additional lawsuits. (Master CMO § IV.A.) Under the terms of the Master CMO, any claim against an Initial Corporate Defendant that was not advanced in a Pending Action was to be submitted in writing to the Receiver for review, determination, and, if necessary, prosecution as if it were a Pending Action. (Master CMO § IV.A, B.) The Master CMO expressly bound "all parties to these consolidated actions, all parties asserting claims in the Receivership encompassed by these actions, and all parties added hereafter . . . ." (Master CMO § I.B.)

{14}    On July 14, 2015, the Court approved a settlement agreement and release between CCSEA and the Epeses (the "Order Approving Settlement and Release"). The Order Approving Settlement and Release also ordered, based on the Receiver's recommendation, that Mr. Jeutter be appointed as receiver for all other entities owned or controlled by the Epeses. (Order Appr. Settl. and Release Decretal ¶ 1.) These entities include: Surgical Eye Center, Inc., ME Greensboro, LLC, HUTA Leasing Company, and MEM of High Point, LLC (collectively with the Initial Corporate Defendants, the "Corporate Defendants").

{15}    The approved settlement and release, in relevant part, was premised upon the Epeses' agreement to make substantially all of their personal assets available to the Receiver for use in the negotiation of the resolution of claims against the Corporate Defendants and the Epeses. (Order Appr. Settl. and Release ¶ 4.) The Epeses' agreement was made in exchange for the Receiver's agreement to release the Epeses from all claims owned by the Corporate Defendants, including CCSEA. (Order Appr. Settl. and Release ¶ 4.) The transfer of the Epeses' assets to the Receiver was accomplished by transferring their assets to two limited liability companies, KEPES Newco, LLC and DRE Newco, LLC, set up for the purpose of liquidating the assets and paying the Epeses' debts. (Order Appr. Settl. and Release ¶ 5.)

{16} Finally, the Order Approving Settlement and Release appointed Mr. Jeutter as receiver for KEPES Newco, LLC and DRE Newco, LLC (collectively with the Corporate Defendants, the "Receivership Entities"). (Order Appr. Settl. and Release Decretal ¶ 1.)

## II.
### FACTUAL AND PROCEDURAL BACKGROUND

{17} The Court does not make findings of fact when ruling on a motion to dismiss pursuant to Rule 12(b)(6) because such a motion "does not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). Most of the facts relevant to the Motions and recited herein are undisputed. Nevertheless, for purposes of CCSEA's Motion, the Court considers only the facts alleged in Dr. Matthews' Amended Counterclaims or that are otherwise properly considered in resolving CCSEA's Motion under Rule 12(b)(6). Similarly, for purposes of Dr. Matthews' Motion, the Court considers only those facts alleged in CCSEA's Complaint or that are otherwise properly considered in resolving Dr. Matthews' Motion.

{18} Although the facts and procedural history surrounding the broader Consolidated Matters are complicated, the allegations relevant to the resolution of these Motions are relatively straightforward.

{19} As discussed above, Plaintiff CCSEA was, at all times relevant to this dispute, an ophthalmological practice located in Greensboro, North Carolina. (Pl.'s Compl. ¶ 2.) CCSEA is currently in receivership and is one of the Receivership Entities. (Pl.'s Compl. ¶ 1.)

{20} On June 30, 1992, Dr. Matthews entered into a written employment agreement with CCSEA (the "Employment Agreement"), whereby Dr. Matthews agreed to practice ophthalmology as an employee of CCSEA. (Pl.'s Compl. ¶ 4.) Section 10 of the Employment Agreement (the "Arbitration Provision") provides in relevant part:

> To the extent there are disputes between Employer and Employee relating to this Agreement . . . which cannot be resolved by the parties, all disputes shall be subject to arbitration conducted in Greensboro,

North Carolina in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any party desiring to initiate such an arbitration shall send written notice to the other party hereto specifying that he desires to commence arbitration.

(Pl.'s Compl. Ex. A ¶ 10.)

{21}   On July 19, 2012, Dr. Matthews voluntarily terminated his employment with CCSEA. (Pl.'s Compl. ¶ 9.)

{22}   Almost three years later, on July 17, 2015, CCSEA filed its Complaint in this Court alleging, among other things, that Dr. Matthews breached the Employment Agreement. CCSEA alleged in Claim 1 of the Complaint that Dr. Matthews breached: (i) section 4 of the Employment Agreement by terminating his employment with CCSEA without written notice, as allegedly required in the Employment Agreement, and prior to the expiration of the alleged five-year term of the Agreement; (ii) section 5 of the Employment Agreement by working during the term of the Agreement in a medical facility that competed with CCSEA; and (iii) section 14 of the Employment Agreement by misusing CCSEA's confidential information and trade secrets. CCSEA alleged in Claim 2 that Dr. Matthews breached his fiduciary duty owed to CCSEA pursuant to the Employment Agreement. On the same day it filed the Complaint, CCSEA filed a request for arbitration with the American Arbitration Association seeking to initiate an arbitration proceeding concerning Claims 1 and 2 of the Complaint. (Def.'s Am. Mots. Dismiss, Answer, and Countercls. Ex. 4.)

{23}   Thereafter, on July 20, 2015, counsel for CCSEA sent a letter to Dr. Matthews to "serve as CCSEA's written notice to [Dr. Matthews] of its desire to initiate arbitration proceedings." (Def.'s Am. Mots. Dismiss, Answer, and Countercls. Ex. 4.)

{24}   The next day, on July 21, 2015, counsel for CCSEA sent a second letter to Dr. Matthews, which included a copy of the Acknowledgement of Demand for Arbitration filed on July 17. (Def.'s Am. Mots. Dismiss, Answer, and Countercls. Ex. 5.)

{25}    On August 7, 2015, CCSEA filed a Motion to Stay and to Compel Arbitration in this action seeking to stay this action until Claims 1 and 2 were resolved in arbitration.

{26}    On August 20, 2015, Dr. Matthews filed a Motion to Dismiss, Answer and Counterclaim in this action, and, on September 8, 2015, he filed a response in opposition to CCSEA's Motion to Stay and Compel Arbitration, contending in both that compelling arbitration of Claims 1 and 2 of the Complaint would be improper and contrary to law.

{27}    Thereafter, on October 20, 2015, CCSEA filed a Notice of Withdrawal of its Motion to Stay and Compel Arbitration.

{28}    On November 20, 2015, the Court held a status conference in this matter, at which the Court discussed with counsel for CCSEA, Dr. Matthews, and the Receiver the parties' pleadings, the various motions which had been asserted and were pending at that time, and the proper procedure for litigating Dr. Matthews' counterclaims, all in light of the injunction established by the Appointment Order, CCSEA's release of claims against the Epeses approved by the Order Approving Settlement and Release, and the claims process established by the Master CMO.  The Court memorialized its oral rulings at the status conference in a November 23, 2015 Order (the "November 23 Order"), which required that Dr. Matthews file an amended answer, withdrawal of counterclaims, and any pre-discovery dispositive motion, as well as submit any claim Dr. Matthews may have against CCSEA to the Receiver in accordance with the Master CMO claims process, by January 8, 2016.

{29}    After the Court entered the November 23 Order, on January 8, 2016, Dr. Matthews filed his Amended Counterclaims, asserting, purportedly by way of set-off, nine separate counterclaims.

{30}    One week later, on January 15, 2016, Dr. Matthews filed a Motion to Dismiss CCSEA's Claims 1 and 2.  Thereafter, on February 10, 2016, CCSEA filed its Motion to Dismiss Dr. Matthews' Amended Counterclaims.

{31}    Both Motions have been fully briefed.  The Court held a hearing on the Motions on June 14, 2016, and both Motions are ripe for resolution.

III.

LEGAL STANDARD

{32}    The overarching question for the Court on a motion to dismiss under Rule 12(b)(6) is "whether as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979)).  Furthermore, "[t]he complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. Cnty. of Person,* 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000).  Factual allegations must be accepted as true; however, bare legal conclusions are "not entitled to a presumption of truth." *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000).

IV.

ANALYSIS

A.    Dr. Matthews' Motion.

{33}    Dr. Matthews seeks dismissal of Claims 1 and 2 of the Complaint.  The parties agree that both Claims involve disputes relating to the Employment Agreement and, pursuant to the Arbitration Provision, are subject to arbitration.[6] Dr. Matthews argues, however, that because CCSEA did not properly initiate arbitration within the applicable statute of limitations period, the Court is without jurisdiction to hear Plaintiff's arbitrable claims and therefore that these claims must be dismissed with prejudice as time-barred.

---

[6] CCSEA alleges that Dr. Matthews' claims for breach of contract and breach of fiduciary duty relate to the Employment Agreement and are therefore subject to the Arbitration Provision.  Dr. Matthews has never sought arbitration of any claims in this action and instead contends that the Employment Agreement is unenforceable but, to the extent it is enforceable, requires Claims 1 and 2 to be arbitrated.  For the purposes of resolving Dr. Matthews' Motion, therefore, the Court will assume without deciding that the Employment Agreement and the Arbitration Provision contained therein are enforceable and that Dr. Matthews' Claims 1 and 2 are subject to the Arbitration Provision.

{34}    The parties, and Dr. Matthews in particular, devote much of their briefing to disputing whether CCSEA properly initiated arbitration of Claims 1 and 2 within the three-year limitations period for asserting claims under the Arbitration Provision that commenced on the date Dr. Matthews left his employment with CCSEA. *See* N.C. Gen. Stat. § 1-52(1).  Whether the arbitration proceeding was timely initiated, however, is irrelevant to Dr. Matthews' Motion because neither party currently seeks to compel arbitration of these claims.[7]

{35}    Rather, the primary issue for consideration on Dr. Matthews' Motion is whether the Arbitration Provision, which states that any dispute relating to the Employment Agreement "shall be subject to arbitration," compels this Court to dismiss claims falling within the Arbitration Provision where neither party has exercised its contractual right to arbitrate the claims.  The Court concludes the answer to this question is clearly no under controlling precedent from our Supreme Court.

{36}    In *Adams v. Nelsen,* 313 N.C. 442, 329 S.E.2d 322 (1985), the parties agreed to an arbitration provision similar to the provision at issue here: "All claims, disputes and other matters in question between the parties to this Agreement, arising out of, or relating to this Agreement or the breach thereof, shall be decided by arbitration." *Id.* at 444 n.1, 329 S.E.2d at 323.  The defendants later attempted to enforce their right to arbitrate certain arbitrable claims after the statute of limitations to enforce the arbitration provision had expired.  *Id.* at 443–44, 329 S.E.2d at 324–25.  The North Carolina Supreme Court concluded that the defendants' failure to demand arbitration within the contract limitations period barred them from asserting their right to arbitrate.  *Id.* at 448, 329 S.E.2d at 325.  The Supreme Court disagreed, however, with the defendants' argument that the arbitration clause "ousted" the trial court of jurisdiction to litigate the arbitrable claims.  To the contrary, the Court explained that the defendants' failure to timely enforce its right to arbitrate was

---

[7] Although CCSEA initially sought to compel arbitration of Claims 1 and 2, it withdrew its motion on October 20, 2015.  Dr. Matthews confirmed at the hearing that he has not sought and does not seek to have these claims arbitrated.

simply a failure to timely exercise a contract right—which was therefore lost—but did not impact the trial court's subject matter jurisdiction over the arbitrable claims. *Id.* at 446, 329 S.E.2d at 324.

{37} Similarly here, the Arbitration Provision granted each party a contract right to pursue arbitration of Claims 1 and 2. It is undisputed that neither party has maintained its contract right to arbitrate during the three-year statute of limitations period for exercise of that right. However, as in *Adams*, the Arbitration Provision did not "oust" the Court of jurisdiction over Claims 1 and 2.

{38} It is undisputed that CCSEA filed Claims 1 and 2 in this action before the statute of limitations on either of those Claims expired, and Dr. Matthews does not otherwise attempt to argue that the Claims are procedurally infirm. As a result, the Court concludes that the Court retains subject matter jurisdiction over Claims 1 and 2 and that Dr. Matthews' Motion to Dismiss should therefore be denied.[8]

B.    CCSEA's Motion.

{39} Dr. Matthews' Amended Counterclaims contain nine separate claims for relief asserted by way of set-off: (1) breach of the Employment Agreement; (2) failure to make distributions in compliance with N.C. Gen. Stat. § 55-6-40; (3) conversion; (4) misappropriation; (5) violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6; (6) violation of N.C. Gen. Stat. § 55-12-02; (7) a demand for an accounting; (8) constructive trust; and (9) failure to investigate and prosecute derivative claims against the principals of CCSEA. CCSEA's Motion seeks to dismiss all nine counterclaims. The Court addresses CCSEA's Motion as to each counterclaim in turn.

---

[8] Dr. Matthews relies on the North Carolina Court of Appeals' decision in *Sims v. Ritter Constr., Inc.*, 62 N.C. App. 52, 302 S.E.2d 293 (1983), a case issued prior to and considered by the Supreme Court in *Adams*, and, in particular, the Court of Appeals' conclusion that "the Superior Court had no jurisdiction to hear the action arising out of the binding contract" where the parties had agreed to arbitrate certain claims. Not only did the Supreme Court in *Adams* reject the notion of an agreement to arbitrate "oust[ing]" the trial court of jurisdiction where a party fails to exercise its right to arbitrate, but *Sims* itself also recognized that, even where a party exercises its contractual right to arbitrate, "[t]here are, of course, some situations in arbitration disputes in which the court retains jurisdiction over the proceeding." *Sims*, 62 N.C. App. at 54 n.1, 302 S.E.2d at 295. Accordingly, the Court does not find Dr. Matthews' reliance on *Sims* persuasive in these circumstances.

i.  Breach of the Employment Agreement and Violation of the Wage and Hour Act

{40}    CCSEA argues that Dr. Matthews' first counterclaim for breach of the Employment Agreement and fifth counterclaim for violation of the Wage and Hour Act should be dismissed because (i) they were not timely filed within the applicable statute of limitations, and (ii) the assertion of these claims in this litigation violates the Master CMO and the claims procedure established therein.

{41}    Significantly for CCSEA's Motion, "the terms 'offset,' or 'set-off' as it is also known, and 'recoupment' are distinct remedies with distinct legal definitions." *Mikels v. Unique Tool & Mfg. Co.*, No. 5:06CV32, 2007 U.S. Dist. LEXIS 91814, at *66 n.7 (W.D.N.C. Dec. 3, 2007) (internal citation omitted).  Set-off is defined as "[a] defendant's counterdemand against the plaintiff*, arising out of a transaction independent of the plaintiff's claim*."  SETOFF, Black's Law Dictionary (10th ed. 2014) (emphasis added). As a general proposition, a claim for set-off, whether asserted as an affirmative defense or counterclaim, is subject to the applicable statute of limitations.  *Perry v. First Citizens Bank & Tr. Co.*, 223 N.C. 642, 644, 27 S.E.2d 636, 637 (1943).  Recoupment is defined as a "[r]eduction of a plaintiff's damages because of a demand by the defendant *arising out of the same transaction*."  RECOUPMENT, Black's Law Dictionary (10th ed. 2014) (emphasis added).  In contrast to set-off, a claim for recoupment is not subject to the otherwise applicable limitations period.  *Ken-Lu Enters., Inc. v. Neal*, 29 N.C. App. 78, 81, 223 S.E.2d 831, 833 (1976) ("[T]he borrowers' counterclaim is in the nature of setoff, not recoupment.  As such, it is subject to the statute of limitations.").

{42}    Although all of Dr. Matthews' Amended Counterclaims are denominated as claims for set-off, the Court concludes that his counterclaims for breach of the Employment Agreement and violation of the Wage and Hour Act are in the nature of recoupment because they arise from the same transaction as CCSEA's claims—i.e., the employment relationship between CCSEA and Dr. Matthews.  Accordingly, the Court concludes that these counterclaims are not subject to a statute of limitations. *See Harris*, 85 N.C. App. at 670, 355 S.E.2d at 840 (on a motion to dismiss, "[t]he question for the court is whether, as a matter of law, the allegations of the complaint,

treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not").

{43} The Court further concludes that Dr. Matthews' assertion of these counterclaims does not violate the terms of the Master CMO. Indeed, the Court ruled, and the Receiver agreed, at the November 23, 2015 status conference in this matter that Dr. Matthews was permitted to assert defenses and counterclaims in the nature of set-off or recoupment in this litigation and did not require such claims to be adjudicated through the claims process in the Master CMO.

{44} Accordingly, the Court concludes that CCSEA's Motion to Dismiss Dr. Matthews' first and fifth counterclaims should be denied.

    ii.   <u>Conversion, Misappropriation, and Violation of N.C. Gen. Stat. § 55-12-02</u>

{45} CCSEA argues for dismissal of Dr. Matthews' third (conversion), fourth (misappropriation), and sixth (violation of N.C. Gen. Stat. § 55-12-02) counterclaims because they are improper derivative claims. Dr. Matthews argues in response that these counterclaims are not derivative, but rather are brought by Dr. Matthews individually.

{46} "[A] derivative action is one brought by a shareholder 'in the right of a corporation'" whereas "[a]n individual action 'is one a shareholder brings to enforce a right which belongs to him personally.'" *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 879 (2002) (internal quotation marks and citation omitted). The general rule in North Carolina is that "[s]hareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220–21 (1997).

{47} In his counterclaim for conversion, Dr. Matthews alleges that "CCSEA, by and through the actions of Epes and McDaniel, has converted CCSEA's property." (Def.'s Am. Countercls. ¶ 38.) Similarly, in his counterclaim for misappropriation, Dr. Matthews alleges that "CCSEA, by and through the actions of Epes and McDaniel, has misappropriated the assets of CCSEA." (Def.'s Am. Countercls. ¶ 43.) Finally, in his counterclaim for wrongful disposition of assets in violation of section

55-12-02, Dr. Matthews alleges that "CCSEA, by and through the actions of Epes and/or McDaniel, sold, leased, exchanged and otherwise disposed of all or substantially all of CCSEA's property and/or assets otherwise than in the usual and regular course of business which action was not authorized pursuant to N.C.G.S. §55-12-02." (Def.'s Am. Countercls. ¶ 53.)

{48} The Court finds that each of these counterclaims clearly seeks recovery of damages for injury to property or assets of CCSEA rather than to Dr. Matthews individually. As such, they are derivative claims brought on behalf of CCSEA. *See, e.g., Anderson v. Seascape at Holden Plantation, LLC*, 773 S.E.2d 78, 87 (N.C. Ct. App. 2015) ("In the context of derivative litigation, the corporation is the real party in interest, because it is the corporation that has suffered the alleged harm, not the individual shareholders."). Because all claims for or on behalf of CCSEA are controlled by the Receiver and have been settled and released pursuant to the Court's Order Approving Settlement and Release, the Court concludes that Defendant's third, fourth, and sixth counterclaims are not properly brought by Dr. Matthews in this litigation and should be dismissed.

iii. <u>Failure to Make Distributions</u>

{49} CCSEA argues for dismissal of Dr. Matthews' second counterclaim for failure to make distributions under N.C. Gen. Stat. § 55-6-40 because the counterclaim was not timely filed within the statute of limitations for such claims and because it, too, is an improper derivative claim.

{50} Turning to the statute of limitations argument first, the Court initially notes that Dr. Matthews brings this counterclaim under N.C. Gen. Stat. § 55-6-40 in the exercise of his rights as a CCSEA shareholder rather than as a former CCSEA employee. As a result, the Court concludes that the counterclaim is properly asserted in set-off because it seeks a reduction in damages arising out of a transaction independent of Plaintiff's employment-based claims. Accordingly, the Court concludes that the counterclaim for failure to make distributions is subject to the three-year statute of limitations for claims made pursuant to a liability created by

statute as provided in N.C. Gen. Stat. § 1-52(2). *See Perry*, 223 N.C. at 644, 27 S.E.2d at 637.

{51} In support of this second counterclaim, Dr. Matthews alleges that CCSEA made distributions to Dr. Epes without Dr. Matthews' knowledge, consent, or approval, and without making similar, required distributions to Dr. Matthews. It is not clear on the face of the second counterclaim, however, when the alleged distributions took place. Because Dr. Matthews has been at all relevant times and remains a shareholder of CCSEA, the Court cannot conclude that the allegedly wrongful distributions were made more than three years prior to the date Dr. Matthews filed his Amended Counterclaims, as CCSEA argues must be the case. As a result, the Court cannot conclude at this stage of the litigation that the statute of limitations requires the dismissal of Dr. Matthews' second counterclaim for failure to make distributions under N.C. Gen. Stat. § 55-6-40. *See Reunion Land Co. v. Village of Marvin*, 129 N.C. App. 249, 250, 497 S.E.2d 446, 447 (1998) ("A statute of limitations can be the basis for dismissal on a Rule 12(b)(6) motion [only] if the face of the complaint discloses that plaintiff's claim is so barred.").

{52} The Court likewise finds CCSEA's argument that Defendant's second counterclaim is an improper derivative claim without merit. Section 55-6-40(c) expressly provides that an "action by a shareholder to compel the payment of dividends may be brought against the directors, or against the corporation with or without joining the directors as parties." The Court thus concludes that this counterclaim is properly brought in Dr. Matthews' individual capacity as a shareholder of CCSEA.

{53} Based on the above, the Court concludes that CCSEA's Motion to Dismiss Defendant's second counterclaim for failure to make distributions should be denied.

iv. Accounting

{54} Dr. Matthews' seventh counterclaim demands "an accounting of all earnings, profits, inventory, supplies, contractual opportunities, assets and advances of CCSEA for the repayment of any advances, loans, transfer of assets or other

payments of any type made by CCSEA to the detriment of CCSEA and/or Matthews to determine the amount of his damages." (Def.'s Am. Countercls. ¶ 58.)

{55} As announced at the hearing, the Court cannot conclude at this early stage of the litigation that an accounting is an improper remedy as a matter of law on the facts alleged in the Amended Counterclaims. Accordingly, the Court concludes that CCSEA's Motion with respect to Defendant's counterclaim for an accounting should be denied.

v. Constructive Trust

{56} Dr. Matthews' eighth counterclaim is for the institution of a constructive trust "with respect to all assets of CCSEA that are ultimately determined to have been transferred to any Receivership Entity." (Def.'s Am. Countercls. ¶ 63.) "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Sara Lee Corp. v. Carter*, 351 N.C. 27, 34–35, 519 S.E.2d 308, 313 (1999) (internal quotation marks and citations omitted).

{57} Here, the Court has already found that equity required the appointment of a receiver for CCSEA, and accordingly provided the Receiver the power "[t]o take immediate exclusive possession and control of [CCSEA's] assets wherever they may be found and to immediately take whatever steps are reasonably necessary to secure, maintain and protect [CCSEA's] assets." (Appointment Order ¶ 49(a).) Pursuant to this authority, the Receiver has taken exclusive possession and control of CCSEA's assets. Thus, the remedy Dr. Matthews seeks by the imposition of a constructive trust has already been provided through the Appointment Order.

{58} Accordingly, the Court concludes that Dr. Matthews' counterclaim for the imposition of a constructive trust is moot and that CCSEA's Motion to Dismiss Defendant's eighth counterclaim should be granted.

vi. Failure to Prosecute or Investigate

{59} Finally, Dr. Matthews' ninth counterclaim alleges that the Receiver has failed to prosecute and investigate fully derivative claims on behalf of CCSEA against

Dr. Epes and Mr. McDaniel. The Court concludes that this purported counterclaim, which is brought against the Receiver for his actions as Receiver rather than against CCSEA for its corporate actions, is not properly brought in this litigation between CCSEA and Dr. Matthews. To the extent Dr. Matthews seeks to challenge any action of the Receiver, such a challenge may be made through proper motion in the Consolidated Matters Master File. Accordingly, the Court concludes that CCSEA's Motion should be granted as to this ninth counterclaim, and that Dr. Matthews' ninth counterclaim should be dismissed without prejudice to Dr. Matthews' right to challenge the Receiver's conduct for good cause shown through proper motion in the Consolidated Matters.

V.

CONCLUSION

{60}    For the foregoing reasons, the Court hereby:

i.    **DENIES** Dr. Matthews' Motion to Strike;

ii.   **DENIES** Dr. Matthews' Motion to Dismiss in its entirety; and

iii.  **GRANTS in part** and **DENIES in part** CCSEA's Motion to Dismiss as follows:

   a. CCSEA's Motion as to Dr. Matthews' third (conversion), fourth (misappropriation), sixth (violation of N.C. Gen. Stat. § 55-12-02), eighth (constructive trust), and ninth (failure to prosecute or investigate) counterclaims is **GRANTED**.

   b. Dr. Matthews' third (conversion), fourth (misappropriation), sixth (violation of N.C. Gen. Stat. § 55-12-02), and eighth (constructive trust) counterclaims are **DISMISSED** with prejudice.

   c. Dr. Matthews' ninth counterclaim (failure to prosecute or investigate) is **DISMISSED** without prejudice.

   d. CCSEA's Motion as to Dr. Matthews' first (breach of the Employment Agreement), second (failure to make distributions under N.C. Gen. Stat. § 55-6-40), fifth (violation of North Carolina

Wage and Hour Act), and seventh (demand for an accounting) counterclaims is **DENIED**.

**SO ORDERED**, this the 22nd day of July, 2016.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases